**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ANTONI MUHAWI, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 18-cv-02022 |
| PANGEA EQUITY PARTNERS, *et al.*, ) ) ) | Hon. Manish S. Shah Magistrate Judge Mary M. Rowland |
| Defendants. ) ) | |

**PANGEA DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to L.R. 56.1(a), Defendants Pangea Equity Partners, Pangea Equity Partners, LP, Pangea Equity Partners II, LP, Pangea Properties, Pangea Ventures, LLC, Pangea Real Estate, and Pangea Real Estate Holdings, LLC (collectively, "the Pangea Defendants"), submit the following as their Statement of Undisputed Material Facts in support of their Motion for Summary Judgment.

1.  The HUD Section 8 HCVP is administered by CHA in Chicago, Illinois. (Doc. 64, ¶ 53).

2.  At all times relevant, the Pangea Defendants or affiliated entities owned numerous multifamily apartment complexes with thousands of HCVP units within the city of Chicago, and they contracted directly with CHA under the HCVP. (*Id.*, ¶ 54).

3.  On April 10, 2015, a CHA employee sent an email to a Pangea employee advising her that "[t]he Housing Specialists in [CHA's] Leasing Department were informed today that going forward, all Pangea RTAs [Requests for Tenancy Approval] must be submitted together

with a rent roll." (Declaration of Krusha Evans ("Evans Decl."), attached hereto as **Exhibit 1**, ¶ 5, Exhibit A, p. 3.)

4. That same day, Cheryl Burns at CHA sent an email to the Pangea employee stating that, "[a]fter our meeting Katie [Ludwig, a CHA staffer] and I discussed the complaints of the participants as it relates to the changing rents. We would like copies of the rent rolls for the buildings that you have HCV residents in. Please know that we have gotten rent rolls from other owners and believe that as stewards of the HCV program we should do some due diligence in response to the complaints." (Evans Decl., ¶ 5, Group Exhibit B , p. 1.)

5. Cheryl Burns is the CHA Chief Housing Choice Voucher Officer. (Doc. 64, Exhibit C, ¶ 1.)

6. On April 16, 2015, David Jaffee at Pangea sent an email to Ms. Burns at CHA stating, in part: "We've discussed this internally and think the request creates an undue burden on our company. We have been unable to identify where in the CHA program a landlord is required to provide this information." (Evans Decl., *¶ 5,* Group Exhibit B, pp. 17-18.)

7. Ms. Burns responded the same day, as follows:

We appreciate your responsibility to ensure the privacy of your residents, we too share that concern. What we are requesting is a copy of the rent rolls with names redacted that would allow us to be certain that there is no validity to complaints we are receiving regarding rental rates from our clients. This will not become a part of any regular process on our part, but will ultimately allow us to make a determination based upon facts.

Please refer to your HAP contract for language that supports our demanding this information. It can be found in Section 6D (page 5)"During the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises. The owner must give the PHA any information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere."

Please let us know when we can expect this information.

(*Id.*, pp. 19-20.)

8. Mr. Jaffee then sent an internal email to other Pangea executives setting forth some "initial thoughts" about a potential response, including:

> · If we decide we have to, I can set up road blocks to make analysis difficult—Limit info to building, unit, rent. Print to PDF, then rescan it so they can't scrape any data. Potentially even mail.
> · Remind them that rents will vary greatly depending on work done to the unit. Many of our tenants are still on inherited leases so the requested amount for a rehabbed unit may be higher than the inherited rents.

(*Id.*, p. 23.)

9. On the following day, April 17, 2015, Mr. Jaffee responded to Ms. Burns with an email which stated:

> [W]e were finally able to compile the requested information, but it appears the document exceeded your email size limit. We will mail the requested documentation to CHA's office first thing Monday.
>
> Please note prices can vary within unit types at the same building, depending on:
> · Whether a lease was inherited from a prior landlord or was signed by Pangea
> · Whether Pangea rehabbed the unit and the type of finish it received
> · The timing of when the lease was signed (as previously mentioned, pricing is dynamic and frequently changing)
>
> We believe this should help you in determining Pangea comps going forward, but would caution against using it as the only determining factor. The finishes on units still vary greatly and are a major factor in determining our requested rent.

(*Id.*, ¶ 5, Exhibit C, p. 3.)

10. On April 29, 2015, Ms. Burns emailed Mr. Jaffee, confirming that she had received the mailed data and asked for an electronic version that would be easier to manipulate:

> I have been able to look at what you sent, however I find it really unfriendly to manipulate. Can you send a thumb drive with this information? We really need an electronic version to be able to manipulate this much data. Otherwise I can have my ITS team work with yours so you can send through an ftp site. Let me know what method will work best for you.

(*Id.*, p. 1.)

3

11. Later that day Mr. Jaffee sent a series of four emails to Ms. Burns which contained the information. (*Id*., pp. 9-10.)

12. The next morning, April 30, 2015, Ms. Burns sent Mr. Jaffee an email stating that, "[a]fter reviewing, I still think a thumb drive of this information will be better. Can you do that or ask your ITS team about uploading to an ftp site?" (*Id*., pp. 8-9.)

13. Mr. Jaffee responded, "I'm in Indianapolis visiting our properties down here for the next two days, but if you send the FTP instructions I should be able to figure that out with my IT team Monday." (*Id*., p. 8.)

14. Ms. Burns replied, "I have copied Sheldon Hondras who is the Manager of our Network team in ITS. He can work with your ITS to send a zip file, but it has to be handled appropriately otherwise it won't come through. Can you connect him to someone on your end? By the way, we will need this document in Excel rather than a PDF." (*Id*., p. 7.)

15. Several days later, on May 5, 2015, Ms. Burns sent a follow-up message to Mr. Jaffee inquiring "[h]ave you identified a contact for Sheldon to work with on this?" (*Id*., pp. 6-7.)

16. Mr. Jaffee responded that day, stating in part that "[t]his information is not readily available in Excel, and it would create a serious burden on company resources for Pangea to provide it in this format." He added that "I'm happy to coordinate with our IT team to send the entire PDF, if you send the FTP instructions (they work on a ticketing system and I need to follow internal procedure)." (*Id*., p. 11.)

17. Ms. Burns responded on May 7, 2015, pushing Pangea to provide the requested information in Excel format. She stated:

> We appreciate the time your team has invested, however I must say it is critical that the CHA be able to review this information. Most software has an export to Excel

4

>   option. I hope you can check to see if that is the case for your software. Otherwise if you can sort them by building and by bedroom size within a building please do that and send as separate files. Please send one file per building if an excel export is impossible.

(Evans Decl., ¶ 5, Exhibit C, pp. 10-11.)

   18.   Pangea may have submitted another (non-Excel) report to CHA in May or early June, although Pangea has no documentation of such a submission. Attached as exhibits to the Declaration of Krusha Evans are all non-privileged documents in the possession of the Pangea Defendants that relate to communications with CHA on the rent roll issue. (Evans Decl., ¶ 5.)

   19.   On June 15, 2015, Ms. Burns wrote to Mr. Jaffee, complaining that the information Pangea had provided was still inadequate.

>   We have reviewed your submission and found that there are no unit numbers on this report, we are therefore unable to use it. As we have discussed previously, we need this information to perform our due diligence to complaints that have risen to our office as well as CHA's Office of Inspector General. I'm afraid if you refuse to submit this information you will leave me no choice but to recommend that CHA stop accepting RTA's [Requests for Tenancy Approval] from Pangea.
>
>   Please provide this information by close of business, Friday, June 26th in either an .xls or .csv format.
>
>   Please let me know if you will comply with this request.

(*Id.*, ¶ 5, Group Exhibit B, p. 36.)

   20.   On June 23, 2015, Mr. Jaffee transmitted extensive rent roll information to Ms. Burns in the form of a lengthy Excel spreadsheet titled "Pangea Rent Roll 6-23-2015." (Evans Decl., ¶ 5, Exhibit D, p. 5; Exhibit E.)

   21.   On July 23, 2015, Ms. Burns responded to Mr. Jaffee and stated:

>   It has taken us an inordinate amount of time to sort through the data, we have reached a place where we will require more information from you. On the yellow highlighted rows of the attached we need you to address all duplicates and give us the exact post office address. For example 5723-34 W Washington. Please identify the street address and unit for the property.

(Evans Decl., ¶ 5, Exhibit D, p. 6.) An Excel spreadsheet titled "Cleaned Pangea Rent Roll 6-23-2015" was attached to Ms. Burn's email. (Evans Decl., ¶ 5, **Exhibit L**.)

22. On August 3, 2015, Mr. Jaffee transmitted the requested information another, shorter Excel spreadsheet, entitled "Pangea Rent Roll 8-3," to Ms. Burns, saying in his cover email: "Apologies for the delay. Please see attached for the requested information." (Evans Decl., ¶ 5, Exhibit D, pp. 6-7; Exhibit F.)

23. On August 4, 2015, Ms. Burns responded, "Thanks so much!" (Evans Decl., ¶ 5, Exhibit D, p. 6.)

24. Thereafter, the Pangea Defendants heard nothing more from CHA about this issue. (Declaration of Patrick Borchard ("Borchard Decl."), attached hereto as **Exhibit 2**, ¶ 7.)

25. CHA continued to make Housing Assistance Payments to the Pangea Defendants for all of its units in the HCVP. (*Id.*, ¶ 8.)

26. By August 3, 2015, Pangea provided sufficient rent roll information to satisfy CHA. That information demonstrated that, in some instances, the rents charged for assisted units exceeded the rent charged for comparable unassisted units in the premises. (Evans Decl., ¶ 5, Exhibit D, p. 6-7 [Fwd: Rent Rolls June 2015]; Exhibit F.)

27. Nonetheless, CHA dropped the issue and continued to make payments to the Pangea Defendants. (Evans Decl., ¶ 5, Exhibit D, p. 7; Borchard Decl., ¶¶ 7-8.)

28. Relator has made repeated admissions that CHA continued to make housing assistance payments to the Pangea Defendants despite knowing "full well" that they were charging more for assisted units than comparable unassisted units in the same premises, and were falsely certifying to the contrary. These admissions appear throughout the SAC (Doc. 23):

> Mr. Muhawi learned that CHA has conspired with the Pangea Defendants in their fraud against HUD and the United States Government. More specifically, CHA is agreeing to and distributing housing assistance payments to the Pangea Defendants despite knowing that the Pangea Defendants are falsely certifying compliance with the requirement that they not charge more for assisted units than comparable unassisted units. (*Id.* ¶ 17.)
>
> Mr. Muhawi has learned that CHA is distributing HUD funds to the Pangea Defendants knowing full well that the Pangea Defendants are charging more for assisted units than comparable unassisted units in the same premises. (*Id.* ¶ 19.)
>
> Mr. Muhawi has learned that CHA is aware that the Pangea Defendants are falsely certifying that they are not charging more for assisted units than they are for unassisted units in the same premises, and that CHA remits housing assistance payments to the Pangea Defendants despite knowing that the Pangea Defendants are falsely certifying compliance with this program requirement. (*Id.* ¶ 77.)
>
> By distributing housing assistance payments to the Pangea Defendants, while knowing that the Pangea Defendants are in violation of their HAP contract requirements and relevant federal regulations, CHA has violated its statutory, regulatory, and contractual requirement to properly administer the Section 8 HCVP. (*Id.* ¶ 79.)
>
> CHA is distributing housing assistance payments to the Pangea Defendants knowing that the Pangea Defendants are falsely certifying to their obligations not to charge higher rents to Section 8 tenants than they are charging to non-Section 8 tenants in comparable units. (*Id.* ¶ 84.)
>
> As a further result of the Pangea Defendants' false statements and certifications, and CHA's decision and agreement to distribute housing assistance payments notwithstanding the Pangea Defendants' false statements and false certifications, HUD made monthly housing assistance payments to the Pangea Defendants that were higher than permitted under the terms of the HCVP. (*Id.* ¶ 87.)

29. Relator specified that all of these allegations were based upon his personal knowledge. (*Id.* ¶ 22.)

30. Relator also advised the Court, in seeking leave to file the SAC, that he had "learned" that "CHA knows the Pangea Defendants are falsely certifying to their rent comparability requirement, but CHA is distributing federal housing assistance payments to them anyway …." (Doc. 20 at 2.)

7

31. Relator explained to the Court that:

Following the United States declination of intervention, counsel from Hodgson Russ LLP had several conversations with counsel for the United States. As a result of those conversations and further investigation, Mr. Muhawi learned that CHA is distributing federal housing assistance payments to the Pangea Defendants despite CHA knowing that the Pangea Defendants are falsely certifying compliance with federal regulations and HCVP requirements.

(*Id.* at 3.)

Dated: January 27, 2022

Respectfully submitted,

Pangea Equity Partners, Pangea Equity Partners, LP, Pangea Equity Partners II, LP, Pangea Properties, Pangea Ventures, LLC, Pangea Real Estate, and Pangea Real Estate Holdings, LLC

By: /s/ Brian Hayes
      One of Their Attorneys

Brian Hayes [ARDC#6332059]
Holland & Knight LLP
150 N. Riverside Plaza, Ste. 2700
Chicago, IL 60606
312-263-3600
brian.hayes@hklaw.com