UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

---

UNITED STATES OF AMERICA, *ex rel.*
ANTONI MUHAWI,

                Plaintiff,

    v.                                        Case No.: 18-CV-02022
                                              Hon. Manish S. Shah

PANGEA EQUITY PARTNERS,
PANGEA EQUITY PARTNERS, LP,
PANGEA EQUITY PARTNERS II, LP,
PANGEA PROPERTIES,
PANGEA VENTURES, LLC,
PANGEA REAL ESTATE, and
PANGEA REAL ESTATE HOLDINGS, LLC,

                Defendants.

---

**PLAINTIFF-RELATOR'S MEMORANDUM OF LAW IN OPPOSITION TO THE
PANGEA DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

                **HODGSON RUSS LLP**
                *Attorneys for Plaintiff-Relator Antoni Muhawi*
                Robert J. Fluskey (*pro hac vice*)
                Patrick E. Fitzsimmons (*pro hac vice*)
                140 Pearl Street, Suite 100
                Buffalo, New York 14202-4040
                716.856.4000

                **ARENTFOX SCHIFF LLP**
                *Attorneys for Plaintiff-Relator Antoni Muhawi*
                William P. Ziegelmueller
                233 South Wacker Drive, Suite 7100
                Chicago, IL  60606
                312.258.5500

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ...................................................................................................1

PROCEDURAL BACKGROUND AND STATEMENT OF FACTS............................................2

ARGUMENT ..................................................................................................................................3

    I.    Witness testimony and the documentary record
confirms that there are material issues of fact in dispute...............................................4

        A.   A truthful and accurate Owner's
Certification is a material condition of payment. ...................................................4

        B.   CHA did not make housing assistance payments to the
Pangea Defendants with knowledge of false Owner's Certifications. ....................6

        C.   The Pangea Defendants' motion for summary judgment fails because they admit the
allegations in the Third Amended Complaint by not answering it. ......................10

    II.   The Pangea Defendants' materiality
defense fails because it focuses solely on CHA. ........................................................11

    III.  Superseded pleadings are not judicial admissions, and the
Pangea Defendants cannot rely on allegations from Mr. Muhawi's
Second Amended Complaint to support their summary judgment motion. ...............14

CONCLUSION.............................................................................................................................15

# TABLE OF AUTHORITIES

PAGE

**Federal Cases**

*188 LLC v. Trinity Indus., Inc.*,
    300 F.3d 730 (7th Cir. 2002) ..................................................................................................14

*United States ex rel. Arnstein v. Teva Pharm. USA, Inc.*,
    13-CV-3702, 2019 WL 1245656 (S.D.N.Y. Feb. 27, 2019)...................................................13

*Burlington N. R.R. Co. v. Huddleston*,
    94 F.3d 1413 (10th Cir. 1996) ................................................................................................10

*United States ex. rel. Carmichael v. Gregory*,
    270 F. Supp. 3d 67 (D.D.C. 2017) ..........................................................................................13

*United States ex rel. Chandler v. Cook County, Ill.*,
    277 F.3d 969 (7th Cir. 2002), *aff'd* 538 U.S. 119 (2003) .......................................................13

*United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 5 F.4th 315 (3rd Cir. 2021) .......................................................................................13

*Kelly v. Denault*,
    374 F. Supp. 3d 884 (N.D. Cal. 2018) ................................................................................12,13

*Majors v. General Elec. Co.*,
    714 F.3d 527 (7th Cir. 2013) ....................................................................................................4

*Marshall v. Local Union No. 701 Int'l Bhd. of Elec. Workers*,
    03-CV-1302, 2005 WL 8177539 (N.D. Ill. Mar. 18, 2005) ...................................................14

*Modrowski v. Pigatto*,
    712 F.3d 1166 (7th Cir. 2013) ...........................................................................................4, 10

*Nisbet v. Van Tuyl*,
    224 F.2d 66 (7th Cir. 1955) ....................................................................................................14

*United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*,
    405 F. Supp. 3d 549 (S.D.N.Y. 2019) ....................................................................................13

*United States v. Goodfish Enterprises, LLC et al.*,
    No. 20-CV-01722 (D. Del. 2020) ......................................................................................11, 12

*United States v. Joel Kennedy Constructing Corp.*,
    584 F. Supp. 3d 595 (N.D. Ill. 2022) ......................................................................................11

## TABLE OF AUTHORITIES - cont'd

PAGE

*Universal Health Services, Inc. v. U.S. ex rel. Escobar*,
   579 U.S. 176 (2016)..................................................................................4, 5, 11, 13

*United States ex rel. Wade v. DBS Investments*,
   LLC, 11-CV-20155, 2012 WL 3759015 (S.D. Fl. Aug. 29, 2012).........................13

*United States ex rel. Youn v. Sklar*,
   273 F. Supp. 3d 889 (N.D. Ill. 2017) .......................................................................4

**Federal Statutes**

31 U.S.C. § 3729................................................................................................................2

31 U.S.C. § 3729(b)(4) .....................................................................................................4

**Rules**

Federal Rule of Civil Procedure 56 ........................................................................3, 4, 10

Federal Rule of Civil Procedure 30(b)(6) ........................................................................1

**Regulations**

24 C.F.R. § 982.507(d) .....................................................................................................5

**Other Authorities**

5 Wright & Miller, *Federal Practice and Procedure* § 1279 (3d ed. 2016)..................10

# PRELIMINARY STATEMENT

The Pangea Defendants admit that they charged higher rents to assisted tenants than unassisted tenants in comparable rental units in violation of federal requirements under the Section 8 Housing Choice Voucher Program ("HCVP") sponsored by the United States Department of Housing and Urban Development ("HUD"). They also admit that they made false certifications to the Government that they were not doing so.

Their sole defense on this motion (and apparently for the entire case) is that these false certifications are immaterial because the Chicago Housing Authority ("CHA"), following a 2015 investigation, learned of this fraud and continued making housing assistance payments anyway. The evidence gathered in discovery craters this argument. CHA's Chief Housing Choice Voucher Officer, Cheryl Burns, who spearheaded the 2015 investigation and was designated CHA's Federal Rule of Civil Procedure 30(b)(6) witness, testified that CHA did *not* make housing assistance payments to the Pangea Defendants with knowledge of their false certifications:

> **Q:** Ms. Burns, did CHA in its investigation ever finally conclude that Pangea was charging more for assisted units than comparable unassisted units?
>
> **A:** No. We didn't come to a final conclusion on it.
>
> **Q:** Did CHA ever continue paying housing assistance payments to Pangea knowing that Pangea was charging more to assisted units than comparable unassisted units?
>
> **Mr. Grill:** Objection, form.
>
> **A:** No.

Plaintiff-Relator's Statement of Additional Material Facts in Opposition to the Pangea Defendants' Motion for Summary Judgement, dated February 17, 2023 ("SOAMF") at ¶¶ 37, 38.

Indeed, during and after the 2015 investigation, CHA continued to rely on the Pangea Defendants' rent comparability certifications. SOAMF at ¶ 36. Had CHA known that the certifications were false, CHA would not have made payments to the Pangea Defendants. SOAMF at ¶ 7.

The Pangea Defendants' summary judgment motion also fails because it focuses solely on CHA, without addressing what the Government deems material. The Pangea Defendants made false certifications to HUD (the U.S. Government), not just to CHA. The case law teaches that the Government finds false certifications of rent comparability to be material, regardless of whether a local housing authority purportedly has knowledge of a landlord's misconduct.

The Court should deny the Pangea Defendants' summary judgment motion and allow discovery on the full scope and monetary impact of the Pangea Defendants' fraud.

## PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

Mr. Muhawi filed his original complaint on March 20, 2018, alleging that the Pangea Defendants violated the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA") for making false certifications of rent comparability in violation of federal regulations that prevent landlords from charging more rent to HCVP assisted units than comparable unassisted units in the same premises ("Owner's Certification"). *See* Dkt. 1.

At the Government's request, Mr. Muhawi filed a first amended complaint to adjust the caption. Dkt. 5. Following the Government's decision not to intervene, Mr. Muhawi, with leave of the Court, filed a second amended complaint ("SAC"), naming CHA as a co-conspirator along with the Pangea Defendants. Dkt. 23. After serving the SAC, and after multiple conferences with counsel for CHA, Mr. Muhawi dismissed CHA from the case and filed a third amended

2

complaint ("TAC"), naming only the Pangea Defendants.[1] Dkt. 64.

Instead of answering the TAC, the Pangea Defendants moved for summary judgment. Dkts. 65-71. They admit making false certifications of rent comparability in violation of the Owner's Certification, but they contend that those false certifications are immaterial because CHA knew about them following a 2015 investigation and continued making housing assistance payments anyway. *See* Dkt. 68, Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Def. MOL") at 9-10, 12.

In response to their summary judgment motion, Mr. Muhawi filed a motion under Federal Rule of Civil Procedure 56(d) seeking discovery. Dkt. 55. The Court granted Mr. Muhawi's motion and permitted discovery from CHA "to obtain evidence on whether CHA knew that Pangea charged more for assisted units than for comparable unassisted units and whether CHA continued to make payments to Pangea while knowing that Pangea charged more for assisted units than for comparable unassisted units." Dkt. 84. The parties obtained document discovery from CHA and deposed three CHA witnesses: Cheryl Burns; Russell Leslie; and Kathryn Ludwig.

In the interest of efficiency, the salient facts relating to CHA's administration of the HCVP, its 2015 investigation of the Pangea Defendants, and the results of that investigation, are set forth in Mr. Muhawi's Statement of Additional Material Facts.

## **ARGUMENT**

A moving party is entitled to summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] The "Pangea Defendants" are defined in this memorandum of law as those entities named as defendants in the Third Amended Complaint. Dkt. 64.

56(a). A genuine dispute concerning a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *United States ex rel. Youn v. Sklar*, 273 F. Supp. 3d 889, 894 (N.D. Ill. 2017) (quotation omitted). To demonstrate that such a verdict is possible, the nonmoving party may produce evidence such as witness affidavits and deposition transcripts, as well as alerting the court to the moving party's failure to file an answer, which constitutes an admission of the complaint's allegations. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-70 (7th Cir. 2013). In considering the motion, the court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. General Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (quotation omitted).

I. **Witness testimony and the documentary record confirms that there are material issues of fact in dispute.**

The Pangea Defendants assert that "the undisputed evidence shows that the alleged false certifications were not material to the payment decision." Def. MOL at 3. They argue that "[b]ecause CHA knew all about the alleged false certifications upon which this case is based, and nonetheless kept making housing assistance payments to the Pangea Defendants, relator's FCA claims fail and the Pangea Defendants are entitled to summary judgment." *Id.* at 13. The evidence gathered to date demonstrates that the Pangea Defendants' contentions are incorrect.

A. **A truthful and accurate Owner's Certification is a material condition of payment.**

The FCA defines "material" as something that has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The Supreme Court instructs that "materiality looks to the effect on the likely or actual behavior

4

of the recipient[2] of the alleged misrepresentation." *Universal Health Services, Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 193 (2016) (quotation marks and brackets omitted). In other words, a misrepresentation is material if it is "so central . . . that the [government] would not have paid the[] claims had it known of the[] violations." *Id.* at 196.

The record here confirms that a truthful and accurate Owner's Certification is a material condition to receiving housing assistance payments from CHA. Ms. Burns testified that a truthful and accurate Owner's Certification is a condition to receiving monthly housing assistance payments and a federal program requirement necessary to CHA's administration of the HCVP. SOAMF at ¶¶ 1-2, 5-7, 9, 11. She also testified that CHA relies on the truth and accuracy of Owner's Certifications and that CHA would not make housing assistance payments to a landlord if CHA knew that the landlord was falsifying Owner's Certifications. SOAMF at ¶¶ 6-7.

The regulations governing the HCVP, which CHA must follow in its administration of the program, make it clear that the Owner's Certification is a material condition to payment: "By accepting each monthly housing assistance payment from the PHA [public housing authority], the owner certifies that the rent to owner is not more than rent charged by the owner for comparable unassisted units in the premises." 24 C.F.R. § 982.507(d); *see also* SOAMF at ¶¶ 2, 4 (Ms. Burns testifying that federal regulations contain the Owner's Certification).

Furthermore, Requests for Tenancy Approval ("RFTA") and Housing Assistance Payments ("HAP") contracts—HUD form documents utilized by CHA in its administration of the HCVP—confirm the Owner's Certification is material to CHA's decision to make housing

---

[2] As noted in Section II below, the term "recipient" in *Escobar* includes the Government, not simply the intermediary recipient of federal funds. However, because the Pangea Defendants' materiality argument focuses solely on CHA, our analysis in Section I focuses on what CHA considers material.

assistance payments. Ms. Burns testified that CHA will not approve a tenancy if it knows that a landlord falsified information in an RFTA. SOAMF at ¶¶ 8-9. She also testified that CHA's HAP contracts contain Owner's Certification provisions, and those provisions are not waived. SOAMF at ¶¶ 3, 6, 9, 11-12. Finally, CHA's administrative plans, adopted and in place during its 2015 investigation, state clearly that an owner, by accepting housing assistance payments, is certifying that rent charged to the HCVP unit is not more than a comparable unassisted unit in the same premises. SOAMF at ¶ 4.

### B.  CHA did not make housing assistance payments to the Pangea Defendants with knowledge of false Owner's Certifications.

The Pangea Defendants contend that it is undisputed that CHA made housing assistance payments to them with knowledge of false certifications. Def. MOL. at 3. Ms. Burns' testimony disproves this contention; at the very least, the testimony establishes a material fact issue.

Ms. Burns explained that the data CHA received from the Pangea Defendants in its 2015 investigation was unusable and hard to analyze. As a result, CHA was unable to conclude whether the Pangea Defendants submitted false Owner's Certifications. SOAMF at ¶¶ 27, 29-30, 37, 39. Her testimony confirms that the Pangea Defendants' concealment plan—in their words, to "make analysis difficult" through "roadblocks"— was successful. SOAMF at ¶¶ 16, 37.

Counsel asked Ms. Burns if CHA finally concluded that the Pangea Defendants were overcharging assisted units and if CHA continued making housing assistance payments to the Pangea Defendants with knowledge of such overcharges. SOAMF at ¶¶ 37-38. Ms. Burns answered both questions with an unequivocal "no." *Id.* Ms. Burns also testified that CHA never waived the Owner's Certification requirement for the Pangea Defendants, an issue the Pangea Defendants alluded to in their motion papers. SOAMF at ¶¶ 3, 6; *see* Def. MOL at 13 (arguing

6

that Ms. Burns' declaration (TAC, Ex. C) is generic and "conspicuously <u>silent</u> about the facts of this case," and "says <u>nothing</u> about . . . Owner's Certifications submitted by the Pangea Defendants.") (emphasis in original).

During the 2015 investigation, two of Ms. Burns' CHA colleagues, Russell Leslie and Tessa Huttenlocher, provided Ms. Burns with analyses that showed potential overcharges. SOAMF at ¶¶ 23-24, 28. In both instances, however, Ms. Burns explained that neither analysis offered a final conclusion regarding violations of the Owner's Certification. SOAMF at ¶¶ 25, 27, 29-30, 35, 37. Lease start dates are required for a proper rent comparability analysis to determine if there is a violation of the Owner's Certification. SOAMF at ¶¶ 30-31. The Pangea Defendants never provided that information to CHA, and Mr. Leslie admitted that he was unaware of that requirement. SOAMF at ¶¶ 26, 32.

The facts behind Mr. Leslie's and Ms. Huttenlocher's incomplete and non-final analyses tell the story of the Pangea Defendants' campaign of concealment. After receiving CHA's initial request for rent roll information in April 2015, the Pangea Defendants' Chief Financial Officer, Patrick Borchard, emailed his colleague David Jaffee, Operations Manager for the Pangea Defendants. SOAMF at ¶ 15. Mr. Borchard expressed concern about CHA's request for information and suggested that they try to obscure the overcharges:

> [o]h shit, not good news. I'm tied up today, but let's discuss tomorrow am. Definitely can't send all rent rolls as is. Probably need to dig in and identify some possible, selected rent rolls that show the least variance from market for our S8 guys. Is that what you're thinking to provide? Do you have any sense for how complete a response they'll insist on? This seems pretty aggressive.

*Id*. Three days later, Mr. Jaffee emailed the Pangea Defendants' then in-house counsel, Jennifer Dean, Mr. Borchard, and then-CEO/co-founder of Pangea Properties, Steve Joung. SOAMF at ¶ 16. Mr. Jaffee offered to create roadblocks and make analysis difficult:

> If we decide we have to [respond to CHA's request], I can set up road blocks to make analysis difficult—Limit info to building, unit, rent. Print to PDF, then rescan it so they can't scrape any data. Potentially even mail.
> …
> I can also start compiling the damage here to see how damning the evidence is if you think it's worth it.

*Id*. This plan impeded CHA's examination. Ms. Burns testified that it "took a long time for [the Pangea Defendants] to provide anything," and when they did provide information, CHA received PDFs and hardcopies at first, then "spreadsheets with extra characters in the unit address," and building range information instead of United States Postal Service addresses. SOAMF at ¶ 17. "It was hard for us to get a handle on what was actually occurring" because "[t]hey weren't providing us with good clear documents that we could make a[n] assessment" on. *Id*. Other CHA analysts enlisted by Ms. Burns to assist in the investigation emailed her to "emphasize that th[e] data sent to us is very inconsistent," and the "building address [information] originally given to CHA d[oes] not match Pangea's Street Address audit." SOAMF at ¶ 22.

The Pangea Defendants also employed selective disclosure as a tactic. Mr. Leslie emailed Ms. Burns days after his initial analysis in September 2015 and explained that he had reviewed CHA's own data and found that the Pangea Defendants maintained 1,130 HCVP units in CHA's program, a major difference from the approximately 50 that he and Ms. Huttenlocher identified in the Pangea Defendants' August 3 rent roll. SOAMF at ¶¶ 33-34.

After the Pangea Defendants stalled for months, turned over unusable hardcopies and PDFs, and selectively disclosed data, CHA's investigation was stymied. SOAMF at ¶¶ 27, 29,

8

35, 37-38. Ms. Burns testified that CHA could not make a final determination, and CHA chose instead to continue relying on the Pangea Defendants' Owner's Certifications. SOAMF at ¶¶ 35-38. No housing assistance payments were made to the Pangea Defendants with knowledge of false certifications. SOAMF at ¶ 38.

The Pangea Defendants' false certifications continued during and after the 2015 investigation. *See* TAC at ¶¶ 60-61, 63-64 (examples of false certifications from 2015 and 2016). After this case was unsealed, the Pangea Defendants continued to mislead CHA. On May 19, 2021, the Pangea Defendants' CEO, Peter Martay, called Ms. Burns directly. SOAMF, Ex. 1 (Burns Tr.), pp. 91:10-92:8. He told her that Mr. Muhawi's allegations were "all made up . . . [and] they were gonna be found innocent." "It wasn't true. Some former employee was making up stuff." *Id*. Based on the internal emails that the Pangea Defendants maintained when this call was placed, and the admissions now made in the their summary judgment motion, Mr. Martay (who has worked for the Pangea Defendants since 2009)[3] knew or should of known that his statements to Ms. Burns were false and misleading. And, it appears that while Mr. Martay was misleading Ms. Burns and CHA, the Pangea Defendants were working to sell their Chicago real estate portfolio, which recently resulted in a $600,000,000 deal for them.[4]

The limited discovery taken from CHA establishes that, in 2015, the Pangea Defendants provided CHA with data that was incomplete, inconsistent, and difficult to analyze. As a result, CHA did not reach a conclusion in its investigation. CHA made no housing assistance payments

---

[3]  Peter Martay's online biography is available here: https://www.pangeaproperties.com/about/our-people/ (last visited February 17, 2023).

[4]  Article discussing the deal is available here: https://www.hpherald.com/evening_digest/pangea-properties-sells-local-residential-portfolio-to-new-york-company/article_980de44e-7b49-11ed-8555-f7da19e56027.html (last visited February 17, 2023).

to the Pangea Defendants with knowledge of false Owner's Certifications. To the contrary, CHA continued to rely on those certifications, which CHA deemed material.

        **C.    The Pangea Defendants' motion for summary judgment fails because they admit the allegations in the Third Amended Complaint by not answering it.**

Instead of filing an answer to Mr. Muhawi's TAC, the Pangea Defendants moved for summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56"). *See* Dkts. 65-71. While filing a motion to dismiss tolls the deadline to file an answer, Rule 56 has no similar provision for summary judgment motions. *See Modrowski*, 712 F.3d at 1170 (filing summary judgment motion without also answering the operative complaint constitutes a failure to deny those allegations resulting in their admission; "[w]hile serving a Rule 12 motion tolls the deadline for a defendant to file an answer, filing a Rule 56 motion has no such effect."). Accordingly, the Pangea Defendants needed to answer the TAC, a procedural necessity Mr. Muhawi alerted them to approximately one year ago. *See* Dkt. 77 at 9 (Rule 56(d) motion for discovery).

Because the Pangea Defendants failed to answer the TAC, and now admit its allegations, their summary judgment motion fails. *Burlington N. R.R. Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996) ("By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden on Plaintiff to prove its case factually.") (citation omitted); 5 Wright & Miller, *Federal Practice and Procedure* § 1279 (3d ed. 2016).

II. **The Pangea Defendants' materiality defense fails because it focuses solely on CHA.**

The Pangea Defendants sole focus on CHA to support their materiality argument is a red herring. The key question is whether the Government—not CHA—considers false Owner's Certifications material. *See Escobar*, 579 U.S. at 194-95.

In *Escobar*, the Supreme Court explained that when a court evaluates materiality, it should look to multiple factors, none of which are dispositive, but all of which focus on the Government. Those factors include "the *Government's* decision to expressly identify a provision as a condition of payment," "evidence that the defendant knows that the *Government* consistently refuses to pay claims . . . based on noncompliance," and whether "the *Government* pays a particular claim in full despite its actual knowledge that certain requirements were violated." *Id.* (emphasis added). Indeed, case law interpreting *Escobar* confirms the focus of the analysis is on the Government, not an intermediary of federal funds. *See United States v. Joel Kennedy Constructing Corp.*, 584 F. Supp. 3d 595, 622 (N.D. Ill. 2022) ("[E]ven when federal funds are disbursed through an intermediary . . . the federal government's objectives and priorities for the use of that money cannot be disregarded in a materiality analysis simply because the federal government is not distributing the money directly.").

Here, there is ample evidence that the Government finds false certifications of rent comparability to be material. For example, the Government (not a relator) filed and recently resolved an FCA case against an HCVP landlord in the District of Delaware. *See United States v. Goodfish Enterprises, LLC et al.*, No. 20-CV-01722 (D. Del. 2020). In *Goodfish*, the Government alleged that:

> [a]s a condition of participation in the HCVP, landlords must regularly certify that the rents they charge to assisted tenants

11

> are not higher than those paid by unassisted tenants in comparable properties. Although Defendants made such certifications, they regularly charged HCVP participants higher rents than those paid by unassisted tenants. Based on the rents charged, Defendants' certifications of rent comparability, which are statutory and regulatory requirements of payment, were fraudulent. Each of those false certifications was a violation of the FCA.

*United States v. Goodfish Enterprises, LLC et al.*, No. 20-CV-01722 (D. Del. 2020), Dkt. No. 22, at ¶¶ 5-6 (Government's Amended Complaint). Indeed, after resolving the *Goodfish* matter, the United States Attorney for the District of Delaware issued a press release saying that landlords who "charg[e] higher rents to residents receiving housing assistance than to residents who require no assistance . . . [are] overcharge[ing] the federal government and tak[ing] money that should be used to help additional needy families."[5] The allegations by the Government in *Goodfish* are precisely the allegations made by Mr. Muhawi here. Furthermore, HUD pursues investigations into alleged violations of rent comparability through audits of local housing authorities and requires the local housing authority to recoup fraudulent overpayments. *See, e.g.,* HUD Office of Inspector General, Renton Housing Authority Audit Report, 2008-SE-1005.[6]

There are also numerous cases where violations by landlords of other HCVP requirements are considered material and actionable under the FCA. *See Kelly v. Denault*, 374 F. Supp. 3d 884, 892 (N.D. Cal. 2018) (overcharging HCVP tenants by collecting excess rent in the

---

[5]     Press release available here: https://www.justice.gov/usao-de/pr/newark-landlords-agree-pay-430000-settle-allegations-collecting-excess-rent-sparrow-run (last visited February 17, 2023); *see also* HUD OIG press release available here: https://www.hudoig.gov/newsroom/press-release/newark-landlords-agree-pay-430000-settle-allegations-collecting-excess-rent (last visited February 17, 2023).

[6]     HUD OIG audit report is available here: https://www.hudoig.gov/sites/default/files/documents/audit-reports/ig0801005.pdf (last visited February 17, 2023).

form of side-payments is material to the government's payment decision and a cognizable claim under the FCA); *United States ex. rel. Carmichael v. Gregory*, 270 F. Supp. 3d 67, 71 (D.D.C. 2017) (same); *United States ex rel. Wade v. DBS Investments*, LLC, 11-CV-20155, 2012 WL 3759015, at *4 (S.D. Fl. Aug. 29, 2012) (same).

      The Pangea Defendants might try to argue that the Government's initial decision to decline intervention is evidence of immateriality. But the case law teaches the opposite. *See, e.g., United States ex rel. Arnstein v. Teva Pharm. USA, Inc.*, 13-CV-3702, 2019 WL 1245656, at *29 (S.D.N.Y. Feb. 27, 2019) (finding relator's alleged violations material where the Government declined to intervene but took over prosecution of a different, yet factually similar, FCA case); *United States ex rel. Chandler v. Cook County, Ill.*, 277 F.3d 969, 974, n. 5 (7th Cir. 2002) ("There is no reason to presume that a decision by the Justice Department not to assume control of the suit is a commentary on its merits. The Justice Department may have myriad reasons for permitting the private suit to go forward including limited prosecutorial resources and confidence in the relator's attorney."), *aff'd* 538 U.S. 119 (2003); *United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 5 F.4th 315, 346 (3rd Cir. 2021) ("In *Escobar*, the Government chose not to intervene, yet the Supreme Court did not mention this as a pertinent materiality factor. And if relator's ability to meet the element of materiality were stymied by the government's choice not to intervene, this would undermine the purposes of the Act.") (citations and brackets omitted)*; United States ex rel. Raffington v. Bon Secours Health Sys., Inc.,* 405 F. Supp. 3d 549, 571 (S.D.N.Y. 2019) (rejecting argument on summary judgment that the Government's failure to intervene suggests the relator's claims are immaterial).

### III. Superseded pleadings are not judicial admissions, and the Pangea Defendants cannot rely on allegations from Mr. Muhawi's Second Amended Complaint to support their summary judgment motion.

The Pangea Defendants rely on allegations from the superseded SAC to support their argument that CHA purportedly had knowledge of false certifications. *See* Def. MOL at pgs. 10-11. But superseded pleadings cannot establish the absence of a material fact issue. Courts in the Seventh Circuit consistently hold that superseded pleadings are not judicial admissions. *See Nisbet v. Van Tuyl*, 224 F.2d 66, 71 (7th Cir. 1955) (an amended pleading "supersedes the prior pleading" making it "withdrawn as to all matters not restated in the amended pleading, and becomes functus officio."); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) ("When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions.") (citation omitted); *Marshall v. Local Union No. 701 Int'l Bhd. of Elec. Workers*, 03-CV-1302, 2005 WL 8177539, at *1 (N.D. Ill. Mar. 18, 2005) ("Matters set forth in superceded pleadings do not even constitute judicial admissions, and do not bind the pleading party.") (citation omitted).

While superseded allegations may have evidentiary value in certain circumstances on summary judgment, that is not the case here. Mr. Muhawi did not move for summary judgment. The Pangea Defendants may not use allegations from superseded pleadings offensively to establish the absence of a material fact issue. *See Nisbet*, 224 F.2d at 71.

Nor can the Pangea Defendants show the absence of a material fact issue by citing statements made in Mr. Muhawi's motion for leave to file the SAC. Def. MOL at 11-12. As detailed in *subsequent* motion papers seeking leave to file the TAC, Mr. Muhawi explained how he obtained new information (after filing the SAC) that supported his request to remove CHA as

14

a co-defendant and file the TAC. *See* Dkt. No. 56 at 1-2; Dkt. No. 62 at 1-3; *see also* Dkt. No. 83, at ¶¶ 11-14.

## CONCLUSION

The limited discovery conducted confirms that the Pangea Defendants' motion for summary judgment fails. The Court should deny the Pangea Defendants' motion.

Dated: February 17, 2023

Respectfully submitted,

**HODGSON RUSS LLP**
*Attorneys for Plaintiff-Relator Antoni Muhawi*

By: /s/Patrick E. Fitzsimmons
    Robert J. Fluskey (*pro hac vice*)
    Patrick E. Fitzsimmons (*pro hac vice*)
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040
716.856.4000
*rfluskey@hodgsonruss.com*
*pfitzsimmons@hodgsonruss.com*

**ARENTFOX SCHIFF LLP**
*Attorneys for Plaintiff-Relator Antoni Muhawi*
William P. Ziegelmueller
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
312.258.5500
*bill.ziegelmueller@afslaw.com*