UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ANTONI MUHAWI, <br><br> Plaintiff, <br><br> v. <br><br> PANGEA EQUITY PARTNERS, *et al.*, <br><br> Defendants. | Case No.: 18-CV-02022 <br> Hon. Manish S. Shah |

**DEFENDANTS' SUPPLEMENTAL STATEMENT OF MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Pangea Equity Partners, Pangea Equity Partners, LP, Pangea Equity Partners II, LP, Pangea Properties, Pangea Ventures, LLC, Pangea Real Estate, and Pangea Real Estate Holdings, LLC, submit the following Supplemental Statement of Undisputed Material Facts in support of their Motion for Summary Judgment.

1. The Chicago Housing Authority ("CHA") received a complaint from a tenant in January 2015 that Pangea was charging more for rent-assisted units under the Housing Choice Voucher Program ("HCVP") than for comparable unassisted units in the same premises. (Dkt. 97-1 (Burns Dep., Ex. 1 to Relator's SOAMF) at 32:1 – 33:2, 37:13-38:10; Ex. M hereto (Burns Dep. Ex. 6) at CHA-0000164; Ex. N hereto (Burns Dep. Ex. 7).)

2. CHA regarded this as a "fraud" issue and launched two investigations, one conducted by its Office of Inspector General ("OIG"), and one conducted by a team under the supervision of Cheryl Burns,. (Burns Dep. at 32:1-14; 38:11-39:6, 188:24-189:3, 10:2-23; Ex. M.)

3. Over the next nine months, Ms. Burns involved nearly a dozen CHA personnel, including herself and her boss, Kathryn Ludwig, in her investigation of this complaint. (Burns Dep. at 33:25-34:18, 63:7-17, 66:25-67:14, 140:7-141:21; 133:14-134:19.)

4. Following a meeting in April 2015, during which Ms. Burns and Ms. Ludwig met with representatives of Pangea and raised the issue of whether Pangea was charging more for assisted units than for comparable unassisted units, CHA requested rent rolls from Pangea so that it could examine that issue. (Burns Dep. at 34:2-21, 40:3-43:3, 44:7-25,134:12-22; Dkt. 97-6 (Ex. 6 to Relator's SOAMF [Burns Dep. Ex. 18]) at CHA-0000155; Ex. N.)

5. Over the next five months, CHA continued to press Pangea for the production of this information and Pangea was slow to provide it. (Burns Dep. at 45:13-46:14; 46:22-47:12, 182:l7-21, 58:20-59:10; Dkt 97-5 (Ex. 5 to Relator's SOAMF [Burns Dep. Ex. 9); Dkt. 97-6 at CHA-0000152-155; Ex. O hereto (Burns Dep. Ex. 10).

6. On June 15, 2015, Ms. Burns advised her boss, Ms. Ludwig, that Pangea had produced the requested information in a format that made it impossible to sort and compare, and had not included unit numbers so CHA could not determine whether a particular unit was assisted or unassisted. Ms. Burns concluded, "I think they are dragging their feet." (Burns Dep. at 46:22-47:12, 145:1-17; Ex. O at CHA-000046; Ex. P hereto (Burns Dep. Ex. 42).)

7. That same day, Ms. Burns wrote to Pangea stating that the information it had provided was still inadequate, and threatening that CHA would stop accepting new Requests for Tenancy Approval from Pangea unless the requested information was forthcoming by June 26, 2015. (Burns Dep. at 49:13-50:11; Dkt. 97-5 at CHA-0000172; Dkt. 97-6 at CHA-0000154.)

8. Pangea then transmitted extensive rent roll information to CHA on June 23, 2015, in the form of a lengthy Excel spreadsheet. (Burns Dep. at 50:12-51:6; Dkt. 97-5 at CHA-0000171; Dkt. 97-6 at CHA-0000153.)

9. A month later, on July 23, Ms. Burns wrote to Pangea saying "[i]t has taken us an inordinate amount of time to sort through the data, we have reached a place where we will require more information from you," and attaching a copy of the Pangea spreadsheet with highlighted rows of the additional information that CHA required. (Burns Dep. at 54:18-55:8; Dkt. 97-6 at CHA-0000152.)

10. On August 3, 2015, Pangea transmitted the requested information to Ms. Burns in another Excel spreadsheet. (Burns Dep. at 58:20-59:10; Dkt. 97-6 at CHA-0000152.)

11. On September 9, 2015, two CHA analysts wrote to Ms. Burns summarizing their analyses of the Pangea rent roll data. (Burns Dep. at 70:7-71:18, 74:23-76:12, 164:23-165:14, 167:8-168:13; Dkt. 97-7 (Ex. 7 to Relator's SOAMF [Burns Dep. Ex. 19]) at CHA-0000362-364; Dkt. 97-8 (Ex. 8 to Relator's SOAMF [Burns Dep. Ex. 20]) at CHA-0000367-370; Dkt. 97-10 (Ex. 10 to Relator's SOAMF [Burns Dep. Ex. 22]).)

12. The first analyst stated that, after comparing the Pangea rent roll to CHA's own data, he had found 40 HCVP units where the rent was higher than comparable non-assisted units, 9 HCV units where it was lower, two units where there was no comparable information, and he noted that "[t]here is a significant difference in the amount change [charged] for the majority of the units." (Burns Dep. at 164:23-167:5; Dkt. 97-8 at CHA-0000367.)

13. The second analyst stated that 42 out of 52 Pangea units in the HCVP had higher rents than the average rent for comparable unassisted units in the same building and added that,

3

"[n]etting all deviations between HCV[P] rents and market rate rents shows that we are potentially losing upwards of $4,000 each month." (Burns Dep. at 167:8-169:12; Dkt. 97-10.)

14. These reports concerned Ms. Burns and raised questions, so that same day, she asked her assistant to schedule a half-hour meeting with the first analyst to discuss his report. (Burns Dep. at 164:23-165:14, 166:8-167:5, 168:11-169:2; Dkt. 97-8 at CHA-0000367.)

15. On September 11, 2015, the first analyst again wrote Ms. Burns, this time reporting that Pangea had 1130 units in the HCVP, that many of those were not included in the rent roll data that Pangea had provided, and recommending that CHA obtain a complete list from Pangea with U.S. Postal Service addresses so that they could be matched against CHA's database. (Burns Dep. at 181:1-25, 183:11-14; Dkt. 97-11 (Ex. 11 to Relator's SOAMF [Burns Dep. Ex. 53]).)

16. On September 14, 2015, Ms. Burns asked the two analysts to work together to write up a methodology and summary of findings on the Pangea project, and both analysts responded that same day. (Burns Dep. at 83:4-84:14; Dkt. 97-12 (Ex. 12 to Relator's SOAMF [Burns Dep. Ex. 25]); Ex. Q hereto (Burns Dep. Ex. 24).)

17. The analysts had found some 50 HCVP units in a subset of the Pangea data that they could compare to non-assisted units in the same buildings, and for approximately 80 percent of those assisted units, Pangea appeared to be charging more for assisted units than it charged on average for unassisted units. (Burns Dep. at 164:23-166:7, 167:8-25, 168:11-169:2, 182:24-183:5; Dkt. 97-8 at CHA-0000367; Dkt. 97-10; Ex. Q.)

18. The analysts found this rent differential could be costing CHA upwards of $4,000 a month just on that subset of 50 units, and the data they analyzed had not included all of the

4

units Pangea had in the HCVP. (Burns Dep. at 167:8-25, 168:14-169:12, 181:1-25, 183:11-14; Dkt. 97-10; Dkt. 97-11; Dkt. 97-12.)

19. On November 2, 2015, Ms. Burns forwarded to her supervisor, Ms. Ludwig, the September 11 email from the first analyst noting that the rent roll information provided by Pangea was incomplete and suggesting that a complete list be obtained, stating, "Katie, per our discussion this was the last report Russell provided to me." (Burns Dep. at 87:18-88:23, 175:20-176:5; Ex. R hereto (Burns Dep. Ex. 26) at CHA-0000411.)

20. CHA did not seek any additional information from Pangea or take any additional action following the analyst's recommendation, though it could have continued the investigation and requested the additional documents its analyst suggested. (Burns Dep. at 86:2-18, 189:23-190:24.)

21. CHA's Administrative Plan for the HCVP provides that, whenever it conducts an investigation, the agency will determine (1) whether an error or program abuse has occurred, (2) whether any amount of money is owed the CHA, and (3) what corrective measures or penalties will be assessed. (Burns Dep. at 187:25-189:22; Ex. S hereto (CHA Admin. Plan for Hous. Voucher Program) at 14-4.)

22. Burns testified that Pangea was the largest landlord in the voucher program and that she did not encounter any investigations similar to the investigation of Pangea during her 12-year career at CHA. (Burns Dep. at 113:18-114:14, 128:18-24, 196:21-23; see also, Ex. T (Ludwig Dep.) at 21:14-16.)

23. Ms. Burns testified that CHA had not made any of the determinations prescribed by the CHA Administrative Plan for the HCVP with respect to Pangea. (Burns Dep. at 187:21-191:4, 190:15-17.) .)

24. The agency halted the investigation for reasons that Ms. Burns did not recall and could not explain. (Burns Dep. at 86:2-18, 88:24-89:7, 184:9-185:11, 187:14-20, 196:11-20.)

25. CHA continued to make housing assistance payments to the Pangea Defendants, without interruption. (Burns Dep. at 192:12-17, 23-25.)

Dated: March 20, 2023.

    Respectfully submitted,

    HOLLAND & KNIGHT LLP
    *Attorneys for Pangea Equity Partners, Pangea Equity Partners, LP, Pangea Equity Partners II, LP, Pangea Properties, Pangea Ventures, LLC, Pangea Real Estate and Pangea Real Estate Holdings, LLC*

By: /s/*Michael A. Grill*
    Michael A. Grill
    Holland & Knight LLP
    150 N. Riverside Plaza, 27th Floor
    Chicago, IL 60606
    (312) 263-3600
    michael.grill@hklaw.com