UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

---

UNITED STATES OF AMERICA, *ex rel.*

ANTONI MUHAWI,

Plaintiff,

v.

PANGEA EQUITY PARTNERS,
PANGEA EQUITY PARTNERS, LP,
PANGEA EQUITY PARTNERS II, LP,
PANGEA PROPERTIES,
PANGEA VENTURES, LLC,
PANGEA REAL ESTATE, and
PANGEA REAL ESTATE HOLDINGS, LLC,

Defendants.

Case No.: 18-CV-02022
Hon. Manish S. Shah

---

### DEFENDANTS' UNOPPOSED MOTION FOR LEAVE TO FILE AMENDED ANSWER TO THIRD AMENDED COMPLAINT

Defendants Pangea Equity Partners, Pangea Equity Partners, LP, Pangea Equity Partners II, LP, Pangea Properties, Pangea Ventures, LLC, Pangea Real Estate and Pangea Real Estate Holdings, LLC (collectively, "the Pangea Defendants"), pursuant to Federal Rule of Civil Procedure 15(a)(2), move for leave to file an amended answer to Plaintiff-Relator Antoni Muhawi's Third Amended Complaint ("TAC"), and in support state the following:

1. On October 19, 2023, the Pangea Defendants filed their Answer to Plaintiff-Relator's TAC ("Answer").

2.  The TAC alleges in broad terms that the Pangea Defendants, either themselves or through subsidiaries or sister entities, owned numerous multifamily apartment complexes with thousands of units within the city of Chicago that they leased to low income tenants pursuant to contracts with the Chicago Housing Authority ("CHA") under the Housing Choice Voucher Program ("HCVP").

3.  In their Answer, the Pangea Defendants answered that "entities affiliated with Pangea Equity Partners II, LP, or Pangea Real Estate Holdings, LLC owned individual multifamily properties with HCVP units within Chicago and that, through Pangea Ventures, LLC, they contracted with CHA under the HCVP."  ECF No. 108, Answer ¶ 54.

4.  In answering two other paragraphs of the TAC – Paragraphs 10 and 12 – the Pangea Defendants provided responses that were less precise than the answer to Paragraph 54.

5.  In response to Paragraph 10, the Pangea Defendants answered, in relevant part, that "Pangea" "entered into contracts with CHA during the relevant period, and in some instances, the rent changed for an assisted unit may have exceeded the rent charged for a comparable unassisted unit in the same premises."  *Id.* at ¶ 10.

6.  In response to Paragraph 12, the Pangea Defendants answered, in relevant part, that "Pangea" "certified compliance with the statutory, regulatory, and contractual requirements of the HCVP, and that, in some instances, the rent changed for an assisted unit may have exceeded the rent charged for a comparable unassisted unit in the same premises."  *Id.* at  ¶ 12.

7.  The Pangea Defendants now seek leave to amend theirs Answer to make the responses to Paragraphs 10 and 12 more precise, conforming to Paragraph 54 and to the discovery that the Pangea Defendants have produced to Plaintiff-Relator. *See Trading Techs. Int'l, Inc. v. IBG LLC*, 10 CV 715, 2019 WL 13087646, at *1 (N.D. Ill. Aug. 30, 2019) (noting that Rule 15(a)

2

"counsels in favor of permitting amendments" and that "the court should freely give leave when justice so requires.'") (internal citation omitted).

8.     Pangea's amendment is not the result of undue delay or bad faith, and will not prejudice any party.

9.     Pursuant to Judge Shah's Motion Practice case procedures, the parties conferred on this motion prior to its filing.  Plaintiff-Relator does not object to this motion.

10.     A copy of Pangea's proposed Amended Answer to Plaintiff-Relator's Third Amended Complaint is attached to this motion as **Exhibit A**.

WHEREFORE, Pangea respectfully requests that this Court grant its motion for leave to files its Amended Answer to Plaintiff-Relator's Third Amended Complaint, and grant such further relief as the Court deems just and proper.

Dated: November 14, 2024                    Respectfully submitted,

HOLLAND & KNIGHT LLP
*Attorneys for Pangea Equity Partners,*
*Pangea Equity Partners, LP, Pangea Equity*
*Partners II, LP, Pangea Properties, Pangea*
*Ventures, LLC, Pangea Real Estate and*
*Pangea Real Estate Holdings, LLC*

By:   /s/*Michael A. Grill*
Michael A. Grill (ARDC No. 6294284)
Holland & Knight LLP
150 N. Riverside Plaza, 27th Floor
Chicago, IL 60606
(312) 263-3600
*michael.grill@hklaw.com*

3

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ANTONI MUHAWI, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Case No. 18-cv-02022 |
| PANGEA EQUITY PARTNERS, *et al.*, | ) ) | Hon. Manish S. Shah |
| Defendants. | ) ) ) |  |

## <span style="color:red">AMENDED</span> ANSWER TO THIRD AMENDED COMPLAINT

NOW COMES Defendants Pangea Equity Partners, Pangea Equity Partners, LP, Pangea Equity Partners II, LP, Pangea Properties, Pangea Ventures, LLC, Pangea Real Estate, and Pangea Real Estate Holdings, LLC (collectively, "Pangea") and for their Answer to Third Amended Complaint state as follows:

1.      This is an action to recover damages, treble damages, and penalties on behalf of the United States of America on account of false and fraudulent claims made or caused to be made by Defendants, their agents, subsidiaries, employees, and co-conspirators, in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729, et seq., as amended (the "FCA").

**ANSWER:** Pangea denies the allegations in Paragraph 1 except admits that Plaintiff's Third Amended Complaint appears to be an action brought for the purposes stated in Paragraph 1.

2.      As set forth below, Chicago's largest private Section 8 landlord is defrauding the United States by systematically and deliberately charging meaningfully more rent for Section 8 apartments than they charge for comparable apartments rented to non-Section 8 tenants. In this way, Defendants have amassed millions in illegal profits, and have damaged the Section 8 program along the way by receiving funds to which they were not entitled.

**ANSWER**:  Pangea denies the allegations of Paragraph 2.

3.      In particular, these violations involve the intentional and systematic submission of false and fraudulent claims for rental subsidies through participation as owner and landlord of

numerous multi-family residential complexes in the United States Department of Housing and Urban Development's ("HUD") Section 8 Housing Choice Voucher Program ("HCVP") in Chicago, Illinois, Baltimore, Maryland, and Indianapolis, Indiana. See 42 U.S.C. § 1437f(o); 24 C.F.R. part 982.

**ANSWER:** Pangea denies the allegations of Paragraph 3.

4.　Through this program, the United States Government, through HUD, provides financial assistance to low-income families, the elderly, and the disabled so they are able to afford decent, safe, and sanitary housing in the private rental market. The Government does this through Congressional funding authorizations, where HUD pays housing subsidies through a local Public Housing Agency ("PHA") to landlords on behalf of eligible HCVP tenants.

**ANSWER:** Pangea admits that the HCVP generally operates as described in Paragraph 4.

5.　As a condition of participating in the HCVP, landlords must certify that the rents they charge to assisted tenants are "not more than rent charged . . . for comparable unassisted units in the premises." 24 C.F.R. § 982.507(d).

**ANSWER:** The allegations in Paragraph 5 contain legal conclusions for which no response is required.  To the extent a response is required, Pangea admits the allegations of Paragraph 5.

6.　From at least 2012 to present, Defendants falsely certified that they were not charging more in rent for assisted units than they were for comparable unassisted units in the same premises (the "rent comparability certification"). In this way, Defendants violated relevant statutory, regulatory, and contractual requirements and defrauded HUD and the United States of America.

**ANSWER:** Pangea denies the allegations in Paragraph 6, except Pangea admits only that, in some instances, the rent changed for an assisted unit may have exceeded the rent charged for a comparable unassisted unit in the same premises.

7.　By knowingly and expressly charging more for HCVP apartments than the law allows, Defendants are intentionally violating HUD regulatory and contractual requirements regarding apartment pricing, and are collecting tens of millions of dollars in rental payments to which they are not entitled.

**ANSWER:** Pangea denies the allegations in Paragraph 7.

8.　Until his forced resignation, relator Antoni Muhawi ("Mr. Muhawi") was an associate working for the Defendants. Mr. Muhawi discovered that they routinely defrauded

HUD, and the United States Government. Based on what Mr. Muhawi has uncovered, the Defendants' conduct is at least reckless, but more likely deliberate and/or intentional.

**ANSWER:** Pangea admits that Mr. Muhawi is a former employee, denies that Pangea

"routinely defrauded HUD," and lacks knowledge sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 8, including what Mr. Muhawi purportedly discovered.

9.      Defendants, who either themselves or through subsidiaries or sister entities, own thousands of HCVP units in Chicago (and other cities), accomplish this fraud in two primary ways.

**ANSWER:** Pangea denies the allegations in Paragraph 9, except admits that Pangea

entities owned thousands of HCVP units in Chicago and other cities.

10.     First, Defendants have an established internal policy that instructs their property managers and leasing agents to quote new HCVP tenants a monthly rental amount approximately $150 above the target rent for a particular unit, while a prospective tenant for a comparable unassisted apartment will not be quoted or charged that higher rental amount. Then, in documentation submitted to the Chicago Housing Authority ("CHA") as well as in the subsequent contract entered into with CHA, Defendants falsely certify that the rental amount for that assisted unit is no more than a comparable unassisted unit in the premises.

**ANSWER:** Pangea denies the allegations in Paragraph 10, except admits only that

documentation was submitted to the CHA, entities affiliated with Pangea entered into contracts

with CHA during the relevant period, and in some instances, the rent ~~changed~~ charged for an

assisted unit may have exceeded the rent charged for a comparable unassisted unit in the same

premises.

11.     Second, Defendants allow non-HCVP tenants (i.e., unassisted tenants) to negotiate downward the monthly target rental amount during rental negotiations. HCVP tenants, on the other hand, are not afforded such an opportunity, making their rents higher than non-subsidized tenants' rents for comparable unassisted units.

**ANSWER:** Pangea denies the allegations in Paragraph 11.

12.     Despite the disparities in rent created by Defendants' fraudulent practices, they regularly falsely certified compliance with the statutory, regulatory, and contractual requirements that mandate that they not charge more for HCVP units than they do for comparable unassisted units in the same premises.

**ANSWER:** Pangea denies the allegations in Paragraph 12, except admits only that entities affiliated with Pangea, through Pangea Ventures, LLC, certified compliance with the statutory, regulatory, and contractual requirements of the HCVP, and that, in some instances, the rent ~~changed~~ charged for an assisted unit may have exceeded the rent charged for a comparable unassisted unit in the same premises.

13.     By so certifying, Defendants have knowingly violated a clear and material condition of receiving rental subsidy payments under the HCVP, and have knowingly submitted, or caused to be submitted, false or fraudulent claims, resulting in the receipt of tens of millions of dollars of rental payments that would not have been paid but for their misconduct.

**ANSWER:** Pangea denies the allegations in Paragraph 13.

14.     The FCA provides that any person who knowingly presents, causes to be presented, or conspires to present, a false or fraudulent claim to the United States of America for payment or approval is liable for a civil penalty of between $11,665 and $23,3311 for each false or fraudulent claim submitted or paid, plus three times the amount of damages sustained by the United States of America from the payment of such fraudulent claims. The FCA's Qui Tam provisions further allow any person having information regarding a false or fraudulent claim against the United States of America to bring an action for himself or herself (as the "relator") and for the United States of America, and to share in any recovery.

**ANSWER:** The allegations in Paragraph 14 contain legal conclusions for which no response is required.  To the extent a response is required, Pangea denies that the United States of America or Relator is entitled any of the relief purportedly provided by the FCA as described in Paragraph 14.

15.     This range of penalties was set by the Department of Justice and applies to penalties assessed after June 19, 2020 for violations that occurred after November 2, 2015. See 28 C.F.R. 85.5.

**ANSWER:** The allegations in Paragraph 15 contain legal conclusions for which no response is required.  To the extent a response is required, Pangea denies that the United States of America or Relator is entitled any penalties purportedly provided by 28 C.F.R. 85.5.

#512594847_v1

15.     Based on these provisions of the FCA, Mr. Muhawi, as relator and original source, seeks to recover damages, treble damages, and civil penalties arising from false claims made to the United States of America that were knowingly presented or caused to be presented to, and were paid by, the United States of America as a result of the acts of Defendants and their agents, subsidiaries, employees, and co-conspirators.

**ANSWER:** Pangea lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16.     Mr. Muhawi uncovered this fraud while conducting a rental pricing analysis after only a few months of employment. Mr. Muhawi presented these findings to Defendants' Financial Planning and Analysis team and informed Defendants' CFO of what he discovered. Defendants did nothing to change their practices.

**ANSWER:** Pangea denies the allegations in Paragraph 16.

### Parties

17.     Relator, Mr. Muhawi, is a resident of Illinois. From April 2017 until February 16, 2018 he was a management associate for Defendant Pangea Ventures, LLC, until he was abruptly forced to resign. Mr. Muhawi has personal knowledge of the facts alleged in this Third Amended Complaint and is acquainted with the Defendants and their business practices. He worked at Defendants' headquarters in Chicago, Illinois.

**ANSWER:** Pangea admits that Relator is a former Asset Management Associate for Pangea Ventures, LLC, where he was employed in Chicago from approximately April 2017 until February 16, 2018.  Pangea avers that Muhawi was given the choice to resign or be terminated for poor performance. Pangea lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17.

18.     Mr. Muhawi brings this action for violations of 31 U.S.C. Sections 3729, et seq., on behalf of himself and the United States of America pursuant to 31 U.S.C. Section 3730(b)(1). The allegations of this action are based upon his personal knowledge, unless otherwise described as being made upon information and belief.

**ANSWER:** Pangea lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19.     Mr. Muhawi is the original source of the factual allegations of this Third Amended Complaint within the meaning of Section 3730(e)(4)(B) of the FCA. Mr. Muhawi is a

highly educated financial professional with a Bachelor of Science degree in Industrial Engineering and Operations Research from UC Berkeley as well as a Masters in Finance Degree from MIT Sloan School of Management.

**ANSWER:** Pangea lacks knowledge sufficient to form a belief as to the truth of the

allegations in Paragraph 19.

20.    Upon information and belief, Defendant Pangea Equity Partners is an assumed name of Pangea Ventures, LLC with a principal office for the transaction of business located at 549 W. Randolph Street, 2nd Floor, Chicago, Illinois, 60661.

**ANSWER:** Pangea denies the allegations contained in Paragraph 20, except admits that

Pangea Equity Partners is an inactive assumed name.

21.    Upon information and belief, Defendant Pangea Equity Partners, LP is a Delaware limited partnership with a principal office for the transaction of business located at 549 W. Randolph Street, 2nd Floor, Chicago, Illinois, 60661, and it is the parent company of Defendant Pangea Real Estate Holdings, LLC.

**ANSWER:** Pangea denies the allegations contained in Paragraph 21.

22.    Upon information and belief, Defendant Pangea Equity Partners II, LP is a Delaware limited partnership with a principal office for the transaction of business located at 549 W. Randolph Street, 2nd Floor, Chicago, Illinois, 60661. Upon information and belief, Defendant Pangea Equity Partners II, LP is wholly-owned by parent company Defendant Pangea Properties, and Defendant Pangea Equity Partners II, LP owns various property holding entities which own properties with apartment units leased to HCVP tenants.

**ANSWER:** Pangea admits that Pangea Equity Partners II, LP is a Delaware limited

partnership with a principal office at 549 W. Randolph Street, 2nd Floor, Chicago, Illinois.

Pangea denies the remaining allegations in Paragraph 22.

23.    Upon information and belief, Defendant Pangea Properties is a Maryland corporation, taxed and treated as a private real estate investment trust, with a principal office for the transaction of business located at 549 W. Randolph Street, 2nd Floor, Chicago, Illinois, 60661.

**ANSWER:** Pangea denies the allegations contained in Paragraph 23 except that it admits

Pangea Properties is a Maryland real estate investment trust.

#512594847_v1

24.     Upon information and belief, Defendant Pangea Ventures, LLC is a Delaware limited liability company with a principal office for the transaction of business located at 549 W. Randolph Street, 2nd Floor, Chicago, Illinois, 60661.

**ANSWER:** Pangea admits the allegations contained in Paragraph 24.

25.     Upon information and belief, Defendant Pangea Real Estate is an assumed name of Pangea Ventures, LLC with a principal office for the transaction of business located at 549 W. Randolph Street, 2nd Floor, Chicago, Illinois, 60661.

**ANSWER:** Pangea admits the allegations contained in Paragraph 25.

26.     Upon information and belief, Defendant Pangea Ventures, LLC, with the assumed name Pangea Real Estate, has operated at relevant times within the Pangea corporate framework as a management company for various entities. Upon information and belief, entities within the Pangea corporate framework that own buildings with units leased to HCVP tenants have granted to Defendant Pangea Ventures, LLC property management authorization through submission to CHA of HCVP affidavits of ownership. This property management authority includes (i) receiving housing assistance payments, (ii) executing HAP contracts, RFTAs, and all other required documentation requested by CHA, and (iii) acting as an owner representative to conduct business with CHA on matters including, but not limited to, submission of rent increase requests, being present for inspections, and attending meetings.

**ANSWER:** Pangea admits the allegations contained in Paragraph 26.

27.     Upon information and belief, Defendant Pangea Real Estate Holdings, LLC is a Delaware limited liability company with a principal office for the transaction of business located at 549 W. Randolph Street, 2nd Floor, Chicago, Illinois, 60661. Upon information and belief, Defendant Pangea Real Estate Holdings, LLC is wholly-owned by parent company Defendant Pangea Equity Partners, LP, and Defendant Pangea Real Estate Holdings, LLC owns various property holding entities that own properties with apartment units leased to HCVP tenants.

**ANSWER:** Pangea admits that Pangea Real Estate Holdings, LLC is a Delaware limited

liability company with a principal office at 549 W. Randolph Street, 2nd Floor, Chicago, Illinois.

Pangea denies the remainder of Paragraph 27.

28.     Upon information and belief, Defendant Pangea Real Estate Holdings, LLC has operated at relevant times within the Pangea corporate framework as a management company for various entities. Upon information and belief, entities within the Pangea corporate framework that own buildings with units leased to HCVP tenants have granted to Defendant Pangea Real Estate Holdings, LLC property management authorization through submission to CHA of HCVP affidavits of ownership. This property management authority includes (i) receiving housing assistance payments, (ii) executing HAP contracts, RFTAs, and all other required documentation requested by CHA, and (iii) acting as an owner representative to conduct business with CHA on

matters including, but not limited to, submission of rent increase requests, being present for inspections, and attending meetings.

**ANSWER:** Pangea denies the allegations contained in Paragraph 28. Pangea avers that Pangea Ventures, LLC was the authorized agent for properties in the CHA HCVP although the name of Pangea Real Estate Holdings, LLC may have appeared on RFTAs in some instances.

29.     Upon information and belief, the entities referenced in paragraphs 20-28 are all related entities and a part of the same corporate family. Upon information and belief, all of these entities share common ownership and are under common control. They are collectively referred to herein as the "Defendants" and together they are the largest private HCVP landlord in Chicago.

**ANSWER:** Pangea denies the allegations in Paragraph 29, except admits that some affiliations exist with respect to ownership and control between the different business entities described in Paragraphs 20-28. Pangea understands that, in the aggregate, entities with which it was affiliated formed the largest private HCVP landlord in Chicago at certain times.

30.     Non-party CHA is the most relevant local PHA. CHA is a municipal not-for-profit corporation in Chicago, Illinois through which HUD funds for the local HCVP are administered and with whom Defendants contract as a participating owner/landlord in that program.

**ANSWER:** Pangea lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 30, except that Pangea admits that HUD funds for the local HCVP are administered through CHA and that Pangea has entered into contracts with CHA as a participating owner/landlord.

### Jurisdiction and Venue

31.     Defendants are doing business and are authorized to do business in this district and are subject to this Court's jurisdiction.

**ANSWER:** Pangea denies the allegations of Paragraph 31, except admits that certain Pangea defendants, namely Pangea Equity Partners II, LP, Pangea Properties, Pangea Ventures, LLC, Pangea Real Estate, and Pangea Real Estate Holdings, LLC are doing business and are

8

#512594847_v1

authorized to do business in this district and are subject to this Court's jurisdiction for purposes

of allegations of this lawsuit. Pangea Equity Partners and Pangea Equity Partners, LP are no

longer existing entities.

32.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C.
Section 1331 and 31 U.S.C. Section 3732, both of which specifically confer jurisdiction on this
Court for actions under the FCA (i.e., under 31 U.S.C. Sections 3729 and 3730).

**ANSWER:** Pangea admits that this Court has jurisdiction over the subject matter of this

action.

33.     Venue is proper under 31 U.S.C. Section 3732(a) because Defendants can be
found and/or transact business within the Northern District of Illinois, and because violation of
31 U.S.C. Sections 3729 and 3730 alleged in this Third Amended Complaint occurred within this
judicial district. Venue is also proper pursuant to 28 U.S.C. Sections 1391(b) and (c).

**ANSWER:** Pangea denies the allegations in Paragraph 33, except admits that certain

Pangea defendants, namely Pangea Equity Partners II, LP, Pangea Properties, Pangea Ventures,

LLC, Pangea Real Estate, and Pangea Real Estate Holdings, LLC can be found in this District

and that venue is proper in this District.

**I.     HUD's Housing Choice Voucher Program**

34.     HUD distributes federal funds for the HCVP pursuant to Section 8 of the United
States Housing Act of 1937, as amended. See 42 U.S.C. § 1437f(o) and 24 C.F.R. part 982. The
HCVP provides rental subsidies for apartment units selected by tenants in the private market. In
this way, the program assists eligible low income families in obtaining decent, safe, and sanitary
housing. The HCVP is administered locally by PHAs, with funds allocated by HUD through
contracts with PHAs. See 24 C.F.R. Part 982.

**ANSWER:** Pangea admits the allegations in Paragraph 34.

35.     Housing assistance, in the form of a voucher, is provided on behalf of the family
or individual, and participants are able to find their own housing, including single-family homes,
townhouses, and apartments.

**ANSWER:** Pangea admits the allegations in Paragraph 35.

36.     HCVP participants generally pay 30-40% of their monthly income toward rent.
PHAs make monthly housing assistance payments to landlords on behalf of program participants

for the remainder of the agreed-upon rent. HUD provides the PHAs with the funds to make the monthly housing assistance payments on behalf of program participants.

**ANSWER:** Pangea admits the allegations in Paragraph 36, except it lacks knowledge sufficient to form a belief as to the truth of the percentage of monthly income that HCVP participants generally pay towards rent.

37.     Because HUD pays a portion of the monthly rent for program participants, the HCVP contains two types of limitations on the amount of rent that can be charged.

**ANSWER:** Pangea lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 37, except that it admits that HUD pays a portion of the monthly rent for program participants.

38.     First, the PHA must ensure that the rent being charged is reasonable, i.e., that it is not more than the rent charged for comparable units in the private market and in the same premises. See 24 C.F.R. §§ 982.4 (definition of "reasonable rent"), 982.507(a)(1).

**ANSWER:** Pangea admits that, pursuant to 24 C.F.R. § 982.507, the PHA must determine whether the rent to owner is a reasonable rent in comparison to rent for other comparable unassisted units.  The terms of this regulation speak for themselves.

39.     Second, and separately, the landlord must certify that the rent charged to HCVP participants does not exceed the rent charged by that landlord to unassisted tenants in comparable units in the same premises. 24 C.F.R. § 982.507(d). In fact, "[b]y accepting each monthly housing assistance payment from the PHA, the owner certifies that the rent to owner is not more than rent charged by the owner for comparable units in the premises." Id.

**ANSWER:** Pangea denies the allegations in Paragraph 39, except admits that landlords certify that rent charged to HCVP participants does not exceed the rent charged to unassisted tenants in comparable units in the same premises and that Paragraph 39 accurately quotes a provision of 24 C.F.R. § 982.507(d).  The terms of this regulation speak for themselves.

40.     When an HCVP participant locates rental housing in the private market, the landlord fills out a Request for Tenancy Approval ("RFTA"), which is promulgated by HUD, specifying the proposed rent and lease term, and submits that form to the local PHA. In the RFTA, the landlord certifies, inter alia, "that the rent charged to the housing choice voucher

tenant is not more than the rent charged for other unassisted comparable units." Exhibit A, ¶ 12. (sample RFTA).

**ANSWER:** Pangea admits the allegations in Paragraph 40.

41.    Where a landlord owns more than four units in a particular location, the landlord must provide rent information on the RFTA for the landlord's three "most recently leased comparable unassisted units within the premises." Id. This paragraph of the RFTA requesting the owner's certification and information on comparable unassisted units in the same premises (hereinafter referred to as the "RFTA Owner's Certification") says that "[t]he program regulation requires the PHA to certify that the rent charged to the housing choice voucher tenant is not more than the rent charged for other unassisted comparable units." Id.

**ANSWER:** Pangea admits that the allegations of Paragraph 41 accurately recite the

contents of the RFTA.

42.    After the local PHA approves the RFTA, the landlord and tenant enter into a lease, and the landlord and PHA enter into a Housing Assistance Payments ("HAP") contract, again using a form promulgated by HUD. See Exhibit B (sample HAP contract).

**ANSWER:** Pangea admits that, as a general matter, after the local PHA approves the

RFTA, the landlord and tenant enter into a lease, and the landlord and PHA enter into a Housing

Assistance Payments ("HAP") contract using a form promulgated by HUD. But Pangea lacks

knowledge sufficient to form a belief as to the truth of the sequence of such events in all

instances.

43.    The HAP contract defines the legal relationship and the agreement between the owner/landlord and the PHA. The HAP contract sets forth, among other things, the amount of the monthly assistance to be paid by the PHA to the owner on the tenant's behalf; the amount of the monthly rent to be paid by the tenant directly to the owner; and the amount of the monthly total rent that the owner is entitled to receive for lease of the dwelling unit.

**ANSWER:** The allegations in Paragraph 43 contain legal conclusions for which no

response is required.  To the extent a response is required, Pangea denies the allegations in

Paragraph 43, except admits that form HAP contracts set forth, among other things: the amount

of the monthly assistance to be paid by the PHA to the owner on the tenant's behalf; the amount

#512594847_v1

of the monthly rent to be paid by the tenant directly to the owner; and the amount of the monthly

total rent that the owner is entitled to receive for lease of the dwelling unit.

44.     Federal regulations and the HAP contract mandate that an owner may not receive more money for an HCVP unit than it receives for a comparable unassisted unit.

**ANSWER:** The allegations in Paragraph 44 contain legal conclusions for which no

response is required.  To the extent a response is required, Pangea admits that certain federal

regulations and portions of the HAP contract form state that owners may not receive more for

HCVP units than for comparable unassisted units.

45.     In particular, the relevant regulation provides that an owner, "[b]y accepting each monthly housing assistance payment from the PHA . . . certifies that the rent to owner is not more than the rent charged by the owner for comparable unassisted units in the premises. The owner must give the PHA information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere." 24 C.F.R. § 982.507(d).

**ANSWER:** Pangea admits that Paragraph 45 accurately quotes a portion of 24 C.F.R.

§982.507(d).

46.     The HAP contract contains similar language. Specifically, paragraph 6(d) of Part B of the HAP contract states that, "[d]uring the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises. The owner must give the PHA any information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere." Exhibit B, Part B, ¶ 6(d).

**ANSWER:** Pangea denies the allegations of Paragraph 46, except admits that Paragraph

46 accurately quotes paragraph 6(d) of Part B of the HAP contract.

47.     Notably, the confirmation in paragraph 6(d) of the HAP contract quoted above— that the assisted rent charged by the owner is not higher than unassisted rents in the owner's comparable units—is distinct from the PHA's determination that the rent is reasonable. Compare Exhibit B, Part B, ¶ 6(a) with ¶ 6(d); Compare also 24 C.F.R. 982.507(a) with 24 C.F.R. 982.507(d); see also United States v. Goodfish Enterprises, LLC et al., No. 20-CV-01722, Dkt. No. 22 (D. Del. 2020) (FCA complaint filed by United States against landlord charging more to assisted units than unassisted comparable units in same premises).

**ANSWER:** The allegations in Paragraph 47 contain legal conclusions for which no

response is required.  To the extent a response is required, Pangea lacks knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 47.

48.     Additionally, in paragraph 8(c) of Part B of the HAP contract, the owner certifies that "[t]he rent to owner does not exceed rents charged by the owner for rental of comparable unassisted units in the premises." Exhibit B, Part B, ¶ 8(c).

**ANSWER:** Pangea denies the allegations of Paragraph 48, except admits that Paragraph 48 accurately quotes an excerpt of paragraph 8(c) of Part B of the form HAP contract.

49.     Similarly, in Part C of the HAP contract (Tenancy Addendum), paragraph 4(c)(2) states that, "[d]uring the term of the lease (including the initial term of the lease and any extension term), the rent to owner may at no time exceed . . . [r]ent charged by the owner for comparable unassisted units in the premises." Exhibit B, Part C, ¶ 4(c)(2).

**ANSWER:** Pangea denies the allegations of Paragraph 49, except admits that Paragraph 49 accurately quotes an excerpt of paragraph 4(c)(2) of Part C of the form HAP contract.

50.     The HAP contract expressly conditions the landlord's right to receive housing assistance payments from the PHA on compliance with all terms of the HAP contract, including without limitation, the rent comparability certification. See Exhibit B, Part B, ¶ 7(b) ("Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract.").

**ANSWER:** The allegations in Paragraph 50 contain legal conclusions for which no response is required.  To the extent a response is required, Pangea denies the allegations of Paragraph 50, except admits that Paragraph 50 accurately quotes an excerpt of paragraph 7(b) of Part B of the form HAP contract.

51.     By operation of 24 C.F.R. § 982.507(d), each time a landlord accepts a monthly housing assistance payment from the PHA, the landlord again certifies "that the rent to owner is not more than rent charged by the owner for comparable unassisted units in the premises."

**ANSWER:** The allegations in Paragraph 51 contain legal conclusions for which no response is required.  To the extent a response is required, Pangea denies the allegations of Paragraph 51, except admits that Paragraph 51 accurately quotes an excerpt of 24 C.F.R. § 982.507(d).

#512594847_v1

52.     Thus, as a condition of participation in the HCVP, the landlord is required to certify that the rent charged to the HCVP participant does not exceed that charged to unassisted tenants in comparable units: (a) when the RFTA is filed; (b) when the HAP contract is executed; and (c) each time a housing assistance payment is received.

**ANSWER:** The allegations in Paragraph 52 contain legal conclusions for which no response is required. To the extent a response is required, Pangea denies the allegations of Paragraph 52, except admits that certification language is contained in the RFTA and HAP contract forms.

## II.     Defendants' Fraud

53.     At all times relevant, CHA, through the receipt of federal funds from HUD, administered the Section 8 HCVP in Chicago, Illinois.

**ANSWER:** Pangea admits the allegation in Paragraph 53.

54.     At all times relevant, the Defendants, either themselves or through their subsidiaries or sister entities, were owners of numerous multifamily apartment complexes with thousands of HCVP units within the city of Chicago, and they contracted directly with CHA under the HCVP by, among other things, executing and entering into HAP contracts and receiving housing assistance payments from HUD, through CHA.

**ANSWER:** Pangea admits that, at all times relevant, single purpose entities affiliated with Pangea Equity Partners II, LP, or Pangea Real Estate Holdings, LLC owned individual multifamily properties with HCVP units within Chicago and that, through Pangea Ventures, LLC, they contracted with CHA under the HCVP. Pangea denies any other allegations of Paragraph 54.

55.     As stated above, Defendants engaged in their fraud in two primary ways: first, they intentionally charged rents to HCVP tenants above the rents they charged non-HCVP tenants in comparable units; and second, they allowed non-HCVP tenants to negotiate downward the rental amount but did not allow for similar negotiated reductions in rent for HCVP tenants. In both instances, the result is that HUD, and the United States Government, pays more for HCVP tenants than non-HCVP tenants pay.

**ANSWER:** The allegations in Paragraph 55 contain legal conclusions for which no

response is required.  To the extent a response is required, Pangea denies the allegations of

Paragraph 55, except it admits only that in some instances, the rent changed for an assisted unit

may have exceeded the rent charged for a comparable unassisted unit in the same premises.

56.     Despite these deliberate rent differentials, Defendants falsely certify in RFTAs, in HAP contracts, and through their receipt of monthly subsidy payments, that the rent they charge to a particular HCVP tenant does not exceed rent charged for a comparable unassisted unit in the premises. The opposite is true. In this way, Defendants are defrauding the Government.

**ANSWER:** Pangea denies the allegations of Paragraph 56.

57.     Beginning no later than 2012, Defendants began committing their HCVP fraud on HUD and the United States Government. Their first method — intentionally quoting (and ultimately charging) rental amounts for HCVP tenants above target rent and falsely certifying that the proposed rent was no more than the comparable unassisted units in the premises — was the Defendants' own stated internal policy.

**ANSWER:** Pangea denies the allegations of Paragraph 57.

58.     In particular, Defendants' internal memorandum, titled "CHA Rules to Live By," instructed employees working with HCVP tenants to list the proposed rent fraudulently on the RFTA at "$100-150 above the target rent – NEVER TBD." This internal memorandum was kept on Defendants' internal shared drive and widely available to Defendants' employees. In addition, on Defendants' internal enterprise knowledge management system, also known as Pangea Knowledge Base, there was an instruction to property managers to submit rent requests to CHA at "$150 over target." The Pangea Knowledge Base was widely available to Defendants' employees.

**ANSWER:** Pangea admits the existence of an internal memorandum titled "CHA Rules

to Live By" and that it was saved on an internal shared drive. Pangea denies the remaining

allegations of Paragraph 58.

59.     As well, Defendants created an internal guide that instructed their employees to lie on the RFTA forms. This internal guide was also kept on Defendants' internal shared drive and widely available to Defendants' employees. In particular, for the RFTA Owner's Certification, the instruction was to "[e]nter [the] address, last rented & amount of comparable unit in building that is occupied and paying the same rent. If there aren't any put unit the voucher holder wants, desired rent amount." In sum, this instruction means that, if there are no unassisted comparable units paying the same rent listed in the proposed rent section of the RFTA, the employee is then to list the unit to be leased by this HCVP tenant and the rent that has been proposed, and ignore any other unassisted comparable units that are paying less. This is exactly what took place.

**ANSWER:** Pangea denies the allegations of Paragraph 59.

60.     For example, HCVP Tenant A rented Defendants' Chicago apartment 4714 S. Michigan Avenue, Unit 2E in or about December 2016. This unit is in an apartment building complex with approximately twenty-four units (some HCVP and some unassisted) located at 4714 – 4720 S. Michigan Avenue. The RFTA, signed by Defendant Pangea Real Estate, which upon information and belief is an assumed name for Pangea Ventures, LLC, listed a proposed monthly rent for Tenant A of $1,205. In the RFTA Owner's Certification, that same unit and the same proposed rent were listed even though there was a comparable unassisted unit within the premises that had been recently leased at a lower amount. Had the RFTA been properly and truthfully prepared for Tenant A and Unit 2E, Unit 3E of 4714 S. Michigan Avenue, which had been leased in or about November 2016 by a non-HCVP tenant for $975 per month, would have been listed. Yet Tenant A's rent was the full $1,205.

**ANSWER:** Pangea denies the allegations in Paragraph 60, except admits that it rented

Chicago apartment 4714 S. Michigan Avenue, Unit 2E in December 2016, which is in an

apartment building complex with approximately twenty-four units located at 4714 – 4720 S.

Michigan Avenue, for a proposed monthly rent of $1,205.

61.     Another example is HCVP Tenant B, who rented Defendants' Chicago apartment 1105 N. Lawler Avenue, Unit 1 in or about November 2016. The RFTA, signed by Defendant Pangea Real Estate, which upon information and belief is an assumed name for Pangea Ventures, LLC, listed a proposed monthly rent for Tenant B of $895. In the RFTA Owner's Certification, the same unit and the same proposed rental amount were listed. Had the RFTA been properly and truthfully prepared for Tenant B and Unit 1, Unit 2 of 1105 N. Lawler Avenue, which had the same lease start date as Unit 1 and was leased to a non-HCVP tenant with a lower monthly rent of $829, would have been listed.

**ANSWER:** Pangea denies the allegations in Paragraph 61, except admits that it rented

Chicago apartment 1105 N. Lawler Avenue, Unit 1 in November 2016 for a proposed monthly

rent of $895.

62.     A slight variation to this first method of listing the same unit in the RFTA Owner's Certification occurred where the Defendants would list a comparable unassisted unit in the building but still list the proposed rent instead of the true rent that the unassisted unit was being charged.

**ANSWER:** Pangea denies the allegations of Paragraph 62.

16

63.     For example, in or about August 2015, HCVP Tenant C rented Defendants' Chicago apartment 8308 S. Ingleside Avenue, Unit 1C, and the proposed rent listed in the RFTA was $710 per month. The RFTA was signed by Pangea Real Estate, LLC. Upon information and belief, Pangea Real Estate, LLC is not an entity. Upon information and belief, Defendants' reference to Pangea Real Estate, LLC is likely a reference to Pangea Real Estate, an assumed name for Pangea Ventures, LLC, or a reference to Pangea Real Estate Holdings, LLC. In the RFTA Owner's Certification, Unit 2C was listed as the comparable unassisted unit in the premises with a lease start date of July 1, 2014. But, in order to deceive HUD and CHA, the rental amount listed for that comparable unit was $710 when, in fact, Unit 2C's rent was only $660 per month.

**ANSWER:** Pangea denies the allegations in Paragraph 63, except that Pangea admits that

it rented Chicago apartment 8308 S. Ingleside Avenue, Unit 1C for a proposed monthly rent of

$710 and that the RFTA was signed by Pangea Real Estate, LLC.

64.     Another example of this is HCVP Tenant D, who rented Defendants' Chicago apartment 10912 S. Vernon Avenue, Unit 1S, in or about January 2016. In Tenant D's RFTA, signed by Defendant Pangea Real Estate, which is an assumed name for Pangea Ventures, LLC, the proposed rent for Unit 1S was $1,135. The RFTA Owner's Certification listed Unit 2S in that building as the comparable unassisted unit and listed the rental amount for Unit 2S as $1,135. But the rental amount for Unit 2S was materially false because Unit 2S was actually renting for $815 per month. Yet the Defendants charged Tenant D the full $1,135 monthly rent.

**ANSWER**: Pangea denies the allegations in Paragraph 64, except admits that it rented

Chicago apartment 10912 S. Vernon Avenue, Unit 1S, in or about January 2016 for a proposed

monthly rent of $1,135.

65.     The second way the Defendants commit their HCVP fraud is by negotiating the target rent downward for non-HCVP tenants, while not doing the same for HCVP tenants.

**ANSWER:** Pangea denies the allegations of Paragraph 65.

66.     Over the years, and regardless of the fraudulent method used by the Defendants, the reality is that both methods have resulted in thousands of false certifications of compliance by the Defendants with their regulatory and HAP contract requirements where they falsely certified that they were not charging more to HCVP tenants than to a non-HCVP tenant renting a comparable unit.

**ANSWER:** Pangea denies the allegations of Paragraph 66 except Pangea admits only that, in some instances, the rent changed for an assisted unit may have exceeded the rent charged for a comparable unassisted unit.

67. For instance, HCVP Tenant E rented Defendants' Chicago apartment 7622 S. Coles Avenue, Unit 1 in or about November 2013. The HAP contract, which was signed by Defendant Pangea Real Estate Holdings, LLC, contains the relevant certifications regarding rent to owner not exceeding the amount charged for a comparable unassisted unit and indicates an initial rent of $960 per month for this unit. Despite that certification in the HAP contract, Unit 2 in that building was a comparable unit rented by a non-HCVP tenant for $810 per month.

**ANSWER:** Pangea denies the allegations in Paragraph 67, except admits that it rented Chicago apartment 7622 S. Coles Avenue, Unit 1 in November 2013 for a proposed monthly rent of $960 and that the HAP contract was signed by Pangea Real Estate Holdings, LLC.

68. Another example of a clear violation of the terms of the HAP contract are seen in HCVP Tenant F's rental of Defendants' Chicago apartment 5316 W. Washington Boulevard, Unit 2 in or about October 2013. The monthly rent being charged to Tenant F was $1,080 and the HAP contract, which was signed by Defendant Pangea Real Estate Holdings, LLC, contained the requisite certifications that this assisted unit was not being charged more in rent than a comparable unassisted unit. These certifications, however, were false. In the month prior to Tenant F's lease, Defendants leased Units 1 and 3—comparable unassisted units in that building—for $930 per month.

**ANSWER:** Pangea denies the allegations in Paragraph 68, except admits that it rented Chicago apartment 5316 W. Washington Boulevard, Unit 2 in October 2013 for a proposed monthly rent of $1,080 and that the HAP contract was signed by Pangea Real Estate Holdings, LLC.

69. At bottom, whether Defendants purposefully quote and charge approximately $150 more to HCVP tenants, negotiate downward with non-HCVP tenants without doing the same for HCVP tenants, or otherwise find a way to deliberately charge more to their HCVP tenants than to their non-HCVP tenants renting comparable units, the result is the same. That is, Defendants routinely charge higher rents to HCVP tenants than to non-HCVP tenants renting comparable unassisted units, and the Defendants falsely certify to CHA and HUD, and ultimately to the United States of America, that they are in compliance with the regulatory and contractual requirements that HCVP tenants' rent not exceed rent for comparable unassisted units.

**ANSWER:** Pangea denies the allegations contained in Paragraph 69, except admits only that, in some instances, the rent changed for an assisted unit may have exceeded the rent charged for a comparable unassisted unit.

70.     Each time that Defendants falsely certified that an HCVP participant was not being charged a rent higher than that charged to unassisted tenants in comparable units, the Defendants were either actually aware that their certifications were false or acted in reckless disregard or deliberate indifference of the truth or falsity of their certifications.

**ANSWER:** The allegations of Paragraph 70 contain legal conclusions to which no response is required. To the extent a response is required, Pangea denies the allegations of Paragraph 70.

71.     The Defendants were fully aware of the rent being charged on each of their properties in each month. As a result, any failure of the Defendants to verify the truth of their required certifications of rent comparability was the result of actual, reckless, or deliberate indifference to this mandatory program requirement.

**ANSWER:** The allegations of Paragraph 71 contain legal conclusions to which no response is required. To the extent a response is required, Pangea denies the allegations of Paragraph 71.

72.     Each time that the Defendants submitted false information on an RFTA and/or received each monthly housing assistance payment for an HCVP unit with a higher rent than a comparable non-HCVP unit in the same premises, they were either actually aware that the information they provided was false or acted in reckless disregard or deliberate indifference of the truth or falsity of that information.

**ANSWER:** The allegations of Paragraph 72 contain legal conclusions to which no response is required. To the extent a response is required, Pangea denies the allegations of Paragraph 72.

73.     The Defendants were fully aware of the dates on which comparable properties had most recently leased and of the current rent being charged for each of their properties. As a result, the false information they provided and false certifications they made were either provided with knowledge of the falsity or was the result of reckless disregard or deliberate indifference.

**ANSWER:** The allegations of Paragraph 73 contain legal conclusions to which no response is required. To the extent a response is required, Pangea denies the allegations of Paragraph 73.

74.     CHA administers the HCVP in Chicago, Illinois, and it contracts with HUD and receives federal funds from HUD to administer the HCVP and disburses housing assistance payments to landlords consistent with statutory, regulatory, and contractual requirements.

**ANSWER:** Pangea denies the allegations of Paragraph 74, except admits that CHA administers the HCVP in Chicago, that it contracts with HUD and receives federal funds from HUD to administer the HCVP, and that it disburses housing assistance payments to landlords.

75.     On September 10, 2021, CHA signed a declaration regarding its administration of the HCVP. The declaration is signed by Cheryl Burns, CHA's Chief Housing Choice Voucher Officer. A copy of the declaration is attached as Exhibit C

**ANSWER:** Pangea admits the allegations of Paragraph 75.

76.     In the declaration, CHA confirms that "[a]s a condition to receiving monthly housing assistance payments under the HCVP, participating landlords must certify that they are not charging more in rent for HCVP assisted units than for comparable unassisted units in the same premises." Exhibit C, ¶ 3. CHA confirms that the rent comparability certification is contained in RFTAs, HAP contracts, federal regulations (24 C.F.R. § 982.507(d)), and in CHA's administrative plans. Like the federal regulations and HAP contracts, CHA's administrative plans, which are found on its website, instruct the participating landlords that they cannot charge more for assisted units than they do for unassisted units in the same premises. For example, CHA's administrative plan adopted by its Board of Commissioners and made effective as of December 1, 2012 includes a section titled "Rents Charged for Other Units on the Premises." This section informs landlords that they are required to list on the RFTA "the rent charged for other unassisted comparable units on the premises if the premises include more than four (4) units." This same section of the administrative plan includes the regulatory language from 24 C.F.R. § 982.507(d) and states that "[b]y accepting the PHA payment each month the owner certifies that the rent is not more than the rent charged for comparable unassisted units on the premises."

**ANSWER:** Pangea denies the allegations of Paragraph 76 except admits that Paragraph 76 quotes the declaration. Pangea avers that CHA's administrative plans speak for themselves.

77.     In the declaration, CHA further confirms that it "relies on the truth and accuracy" of the rent comparability certification in its administration of the HCVP and that the certification "is separate and distinct from a rent reasonableness determination made by or on behalf of the

CHA." Exhibit C, ¶¶ 4-5. Indeed, the rent comparability certification is material to CHA's administration of the HCVP, and a determination by or on behalf of CHA that a rent is "reasonable" does not absolve a landlord who falsely certifies that the rent they are charging to an HCVP tenant is not more than the landlord is charging to a non-HCVP tenant renting a comparable unit in the same premises.

**ANSWER:** Pangea denies the allegations of Paragraph 77 except admits that Paragraph

77 quotes certain aspects of the declaration.

78.     HUD and CHA rely on Defendants' compliance with their contractual and regulatory certifications in the administration of the HCVP, including but not limited to the truth and accuracy of the rent comparability certification. HUD conditions the subsidy payments that Defendants receive based on the certifications that they are not charging more to HCVP tenants than to non-HCVP tenants in comparable units.

**ANSWER:** Pangea denies the allegations of Paragraph 78, except admits that certain

HUD forms contain certifications that landlords are not charging more to HCVP tenants than to

non-HCVP tenants in comparable units.

79.     As a result of their materially false statements and false certifications, Defendants entered into numerous HAP contracts and leases that illegally charged HCVP tenants higher rents than those being paid by unassisted tenants in comparable properties.

**ANSWER:** The allegations of Paragraph 79 contain legal conclusions to which no

response is required. To the extent a response is required, Pangea denies the allegations of

Paragraph 79.

80.     As a further result of Defendants' materially false statements and false certifications, HUD, through CHA and other local PHA's, made monthly housing assistance payments to Defendants that were higher than permitted under the terms of the HCVP.

**ANSWER:** Pangea denies the allegations of Paragraph 80.

81.     Upon information and belief, at least Defendant Pangea Real Estate Holdings, LLC and Defendant Pangea Ventures, LLC received monthly housing assistance payments as a result of the fraudulent conduct described herein. Defendant Pangea Real Estate Holdings, LLC submitted W-9 Request for Taxpayer Information Forms to CHA and received direct deposits of monthly housing assistance payments, knowing that such payments were obtained as a result of the fraudulent conduct alleged herein. Upon information and belief, Defendant Pangea Ventures, LLC submitted void checks to CHA and received direct deposits of monthly housing assistance

payments, knowing that such payments were obtained as a result of the fraudulent conducted alleged herein.

**ANSWER:** Pangea denies the allegations of Paragraph 81, except admits that Pangea Real Estate Holdings, LLC and Defendant Pangea Ventures, LLC received monthly housing assistance payments, that Pangea Real Estate Holdings, LLC submitted W-9 Request for Taxpayer Information Forms to CHA and received direct deposits of monthly housing assistance payments, and that Defendant Pangea Ventures, LLC submitted void checks to CHA and received direct deposits of monthly housing assistance payments.

82.    In the absence of Defendants' materially false statements and false certifications, the rents for numerous HCVP participants would have been set at lower monthly amounts, resulting in lower housing assistance payments from HUD, through CHA and other local PHA's, to Defendants.

**ANSWER:** Pangea denies the allegations of Paragraph 82.

83.    Had HUD been aware of Defendants' material false statements, false certifications, and illegal actions, HUD would have taken action to either reduce the housing assistance payments made to Defendants or suspended their participation in the HCVP.

**ANSWER:** Pangea denies the allegations of Paragraph 83.

84.    Defendants accepted the monthly housing assistance payments and kept the money without notifying HUD or the federal government that they were not in compliance with their contractual and regulatory certifications, nor did Defendants return any money to which they were not entitled due to their misconduct and materially false certifications.

**ANSWER:** Pangea denies the allegations in Paragraph 84, except admits that it accepted monthly housing assistance payments from CHA.

85.    Defendants have had, and have, the requisite knowledge of these practices under the FCA and upon information and belief the fraud is ongoing.

**ANSWER:** Pangea denies the allegations in Paragraph 85.

**Count One**
**Substantive Violations of the False Claims Act [31 U.S.C. §§ 3729(a)(1)(A)]**

22

86.     Mr. Muhawi repeats and realleges each allegation of numbered paragraphs 1 through 85 of this Third Amended Complaint as part of this First Cause of Action.

**ANSWER:** Pangea repeats and restates the answers set forth above in Paragraphs 1-85 as if fully stated herein.

87.     The Defendants, together with their agents, subsidiaries, employees, and co-conspirators, knowingly presented and caused to be presented materially false or fraudulent claims to the United States of America for housing assistance payments under the HCVP in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A).

**ANSWER:** Pangea denies the allegations in Paragraph 87.

88.     The false or fraudulent statements were contained in RFTAs, HAP contracts, and certifications made pursuant to 24 C.F.R. § 982.507(d).

**ANSWER:** Pangea denies the allegations in Paragraph 88.

89.     As a result of the knowingly false and fraudulent claims submitted or caused to be submitted by Defendants, together with their agents, subsidiaries, employees, and co-conspirators, the United States of America, through HUD, paid rental subsidies to which the Defendants were otherwise not entitled.

**ANSWER:** Pangea denies the allegations in Paragraph 89.

90.     Because of the Defendants' false claims, the United States of America suffered substantial damages. Total damages are unknown at this time, but they are expected to exceed tens of millions of dollars.

**ANSWER:** Pangea denies the allegations in Paragraph 90.

91.     As a result of the knowingly fraudulent conduct of the Defendants, together with that of their respective agents, subsidiaries, employees, and co-conspirators, Defendants are jointly and severally liable to the United States of America for the amount of the payments made to them, trebled, plus penalties, interest, and attorneys' fees and expenses under the FCA.

**ANSWER:** Pangea denies the allegations in Paragraph 91.

## Count Two
### Substantive Violations of the False Claims Act [31 U.S.C. §§ 3729(a)(1)(B)]

92.     Mr. Muhawi repeats and realleges each allegation of numbered paragraphs 1 through 91 of this Third Amended Complaint as part of this Second Cause of Action.

23

**ANSWER:** Pangea repeats and restates the answers set forth above in Paragraphs 1-91 as if fully stated herein.

93.     The Defendants, together with their agents, subsidiaries, employees, and co-conspirators knowingly made, used, or caused to be made or used, false records or statements that were material to claims to the United States for housing assistance payments under the HCVP in violation of the FCA, 31 U.S.C. § 3729(a)(1)(B).

**ANSWER:** Pangea denies the allegations in Paragraph 93.

94.     The false or fraudulent records and/or statements were contained in RFTAs, HAP contracts, and certifications made pursuant to 24 C.F.R. 982.507(d).

**ANSWER:** Pangea denies the allegations in Paragraph 94.

95.     The false or fraudulent records and/or statements were material to the Defendants' claims for housing assistance payments under the HCVP in that HUD would not have made or reimbursed the housing assistance payments absent the false or fraudulent records and/or statements.

**ANSWER:** Pangea denies the allegations in Paragraph 95.

96.     Because of Defendants' false or fraudulent records or statements, the United States of America suffered damages, which total, at this time, is unknown but which can be expected to equal or exceed tens of millions of dollars.

**ANSWER:** Pangea denies the allegations in Paragraph 96.

97.     As a result of the knowingly fraudulent conduct of the Defendants, together with that of their respective agents, subsidiaries, employees, and co-conspirators, Defendants are jointly and severally liable to the United States of America for the amount of the payments made, trebled, plus penalties, interest, and attorneys' fees and expenses under the FCA.

**ANSWER:** Pangea denies the allegations in Paragraph 97.

## **AFFIRMATIVE DEFENSES**

### **First Affirmative Defense**

Plaintiff's Third Amended Complaint fails to state a claim upon which relief can be granted.

### **Second Affirmative Defense**

24

Relator's claims may be time-barred, in whole or in part, under the applicable statute of limitations, statute of repose and/or by the doctrines of waiver and/or laches.

### Third Affirmative Defense

Relator's claims are barred, in whole or in part, because Relator has taken actions or made statements (or failed to take actions) that estop him from asserting his claims.

### Fourth Affirmative Defense

Relator's claims barred, in whole or in part, to the extent Relator has waived those claims.

### Fifth Affirmative Defense

Relator's claims are barred because he is not an "original source" of the information alleged in the Third Amended Complaint, as required under 31 U.S.C. § 3730(e)(4).

### Sixth Affirmative Defense

Formal comprehensive discovery has not yet been completed in this action. Accordingly, Pangea reserves the right to add and rely upon such other and further defenses and cross-claims as may become apparent during the discovery of this action, and it reserves the right to amend its Answer and other pleadings to assert such additional defenses and cross-claims.

Dated: ~~October 19, 2023~~                Respectfully submitted,

Pangea Equity Partners, Pangea Equity Partners, LP, Pangea Equity Partners II, LP, Pangea Properties, Pangea Ventures, LLC, Pangea Real Estate, and Pangea Real Estate Holdings, LLC

By: /s/ Michael A. Grill
   One of Their Attorneys

25

Michael A. Grill [ARDC# 6294284]
Rachel C. Agius [ARDC# 6322386]
Holland & Knight LLP
150 N. Riverside Plaza, Ste. 2700
Chicago, IL 60606
312-263-3600
michael.grill@hklaw.com
rachel.agius@hklaw.com

#512594847_v1